[S. F. No. 5762. In Bank.—October 2, 1912.]

## F. P. CUTTING COMPANY, Respondent, v. FRANK B. PETERSON, Appellant.

SALE—REFORMATION—GUARANTY AGAINST PRINTED SELLING PRICES OF ANOTHER MANUFACTURER — ABSENCE OF MISTAKE IN WORDING OF CONTRACT.—A provision in a written contract for the sale and delivery of certain canned goods to be thereafter packed by the seller, guaranteeing the prices therein fixed against the "opening printed prices" for the season of a specified packing company whose selling prices fixed and controlled the market prices of such goods, and whose previous custom had been to announce its opening selling

prices by a printed circular issued to the trade but who omitted
to do so for the season in question, may be reformed so as to ex-
press the mutual intention of the parties that the guaranty should
protect the purchaser against any prices which might be made on
such goods by such packing company, whether the prices so fixed by
it were printed or announced by other methods.   This is so, although
there was no mistake between the parties with respect to the words
which were inserted in the guaranty provision.

Id.—Mutual Mistake Rendering Words Used Inapplicable to Ex-
press Intent.—The fact that the parties to a contract used the very
words which they intended to use is not always sufficient cause for
refusing the relief of reformation.   There may be no mistake as
to the words used or to be used, and at the same time there may
have been a mutual mistake as to some other matter of fact, affect-
ing the meaning or application of the words and by reason thereof
the contract may not truly express the real intention of both parties,
and in that event it may be revised and reformed at the instance
of the aggrieved party and enforced accordingly, although the
words were carefully chosen.

Id.—Mistake in Expecting Certain Thing to Happen in Future.—
The mutual mistake of the parties to such contract consisted in
expecting a thing to happen in the future which did not occur, that
is, that the packing company referred to would issue its customary
printed price list.   That led to the insertion of the word "printed"
in the guaranty.

Id.—Mistake as to Future Event—Doctrine of Reformation Appli-
cable to.—Relief from the consequences of a mutual mistake is not
confined to cases where the mistake was with reference to a past
event, or to the present existence of some fact or thing.   The doc-
trine is applicable where both parties by mistake expect a future
event to occur and describe the subject matter by words which make
the intent clear if the event does happen as expected, but which
defeat the real intent if the event does not so happen.

APPEAL from an order of the Superior Court of the City
and County of San Francisco refusing a new trial.   George
A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Devoto & Richardson, for Appellant.

Gerald C. Halsey, for Respondent.

THE COURT.—This action was to recover for the unpaid
part of the purchase price of some thousands of cases of

canned tomatoes sold and delivered by plaintiff to defendant. The court instructed the jury to render its verdict for the plaintiff in the amount sued for. This the jury did and from the order denying his motion for a new trial defendant appeals.

Plaintiff is a company engaged in the business of canning fruits and vegetables. Defendant is a wholesale grocer. Plaintiff and defendant entered into a written contract for the sale and delivery of canned tomatoes. These canned tomatoes were "futures," that is to say, they were yet to be packed. The contract fixed the price per dozen for the different qualities sold, and contained the following provision: "The above prices guaranteed against the California Fruit Canneries Association opening printed prices for the season of 1908." It was executed on August 12, 1908, which was a short time before the beginning of what was called the season of 1908. It is over this provision of the contract that the whole controversy is waged. The plaintiff sued for a recovery under the prices named in the contract, averring that the association "did not print any opening printed prices for the season of 1908 on said goods." The defendant for answer alleged that it was mutually understood and mutually agreed between the parties to the contract that the prices fixed in the contract were subject to reduction if it became necessary to meet any prices that might be fixed for the goods mentioned in the contract by the association, and that the language "the above prices guaranteed against the California Fruit Canneries Association opening printed prices for the season of 1908," was inserted with the mutual intention of the parties that the "guarantee should protect this defendant against any prices which might be made on said goods by said California Fruit Canneries Association for said season of 1908."

Upon the trial, after a prolonged effort on the part of the defendant to introduce evidence of mutual mistake under the allegations of the answer, the court stated that the answer was not sufficient as an application for the correction of a mistake and to enforce the contract as revised and corrected, but that, as the defect could be supplied by an amendment, evidence would be taken to ascertain whether or not there had been such mistake in drawing the contract, with a view

to allowing such amendment if the mistake appeared. No objection was made to this course, and the court proceeded to hear the evidence offered on that subject.

At the close of this evidence the plaintiff moved the court to deny the application to amend the answer and for a reformation of the contract, on the ground that no mistake which could be corrected under the principles of equity was shown by the evidence. The court sustained this motion and refused to allow the defendant to amend the answer or to proceed further with the proposed defense.

The contention of the defendant was that the phrase "opening printed prices," in the clause above quoted, did not correctly state the meaning which the parties mutually desired to express; that the idea sought by both parties to be expressed was that the Cutting Company would reduce the prices named in the contract, so as to make the selling prices equal to the opening market prices which the California Fruit Canneries Association should fix and declare for the season of 1908, whether the prices so fixed were printed or announced by other methods.

The contention of the plaintiff was that there was no mistake between the parties with respect to the words which were to be inserted in the contract and that they, in effect, selected the very words used as the best expression of their intention, according to their understanding of the conditions at that time. The evidence showed that there was no mistake in the selection of the words and it appears that the court below directed the verdict upon the theory that if the mistake was not with respect to the selection of the words to be used there was no mistake shown within the rule by which courts of equity will reform contracts.

The fact that the parties used the very words which they intended to use is not always sufficient cause for refusing relief of this character. There may be no mistake as to the words used or to be used, and at the same time there may have been a mutual mistake as to some other matter of fact affecting the meaning or application of the words, and by reason thereof the contract may not truly express the real intention of both parties, and in that case it may be revised and reformed at the instance of the aggrieved party and enforced accordingly, although the words were carefully chosen. (Civ.

Code, secs. 3399, 3401, 3402.) We now state the facts shown by the evidence on this subject.

At the time the contract was made and for many years prior thereto the California Fruit Canneries Association had packed so large a part of the canned goods of the state that when it declared its opening prices for such goods all other producers and dealers at once conformed thereto. In other words, that association fixed and controlled the market prices of those goods. It had regularly and habitually in preceding years announced its prices at the opening of the season by printing and distributing generally to the trade a circular containing its established price list for "futures" for that season. The parties to this contract did not personally meet. The contract was negotiated by Mr. Oliphant, a broker, who acted as go-between or mutual agent of the parties, representing the Cutting Company when talking with Peterson and Peterson when talking with the officers of the Cutting Company. The association had not at that time announced or declared its prices for the coming season, but both parties believed and expected that it would do so in a short time and that the announcement would be made in the usual manner, that is, by a printed circular distributed to the trade. When the prices named by the Cutting Company were discussed between Oliphant and Peterson, the latter said he would not agree thereto unless the contract contained a clause guaranteeing him against the opening prices for the season to be thereafter fixed by said association. By this it was meant and understood by both parties that if the association's prices were lower than the prices named in the agreement, then the association's prices should be those upon which the sales under the contract should be made. This requirement of Peterson was communicated to the Cutting Company by Oliphant and that company thereupon agreed that the contract should contain a provision to that effect. The association sometimes made lower prices to particular customers and the Cutting Company insisted that the guaranty should not extend to such special prices, but only to the general prices fixed. This was agreed to by Peterson. Having thus brought the parties to an agreement, Oliphant drew the contract for the purpose of expressing the agreement so made, and to provide for the guaranty required he inserted the clause above quoted and

submitted the contract to both parties. It was satisfactory to both as a correct expression of their intention and each thereupon signed it.

It is apparent from this evidence that the object to be secured by the clause in question was to put Peterson on an equal footing with other dealers in canned tomatoes, in case the association's opening prices, and the general market prices thereby fixed, should be less than those named in the contract. The printing of the price list by the association was wholly immaterial to this purpose, but both parties, assuming that such price list would be printed as usual, and desiring to use language that would exclude occasional or special prices as a standard, accepted the words "opening printed prices," as a good description of the standard intended. The words would clearly have accomplished that purpose, if the event had occurred in the manner each expected it would. When the season opened, however, the event proved that the expectation that there would be a printed announcement of association prices was a mistaken one. There can be no doubt from the evidence that this expectation was entertained by both parties, that the mistake in that respect was mutual, and that by reason thereof the contract failed truly to express the intention of the parties.

The case comes clearly within the sections above cited. Section 3399 declares that when through a "mutual mistake of the parties" a written contract "does not truly express the intention of the parties, it may be revised on the application of the party aggrieved, so as to express that intention." The fact that no word was inserted which the parties did not intend to insert and none omitted which they did intend to insert or supposed had been inserted, does not prevent the application of the rule, nor make it any the less a case of mistake. It was the mutual mistake in expecting a thing to happen in the future which did not occur that led to the insertion of the word "printed." This word, if taken literally in connection with the fact that the price list for that season was not printed, would operate to frustrate the real intent. Section 3401 covers this point precisely. It is as follows: "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry

what the language of the instrument was intended to be." It was shown that both parties intended the legal consequences of the contract to be that the opening market prices of the season as established by the association should be the prices for which the goods should be sold to Peterson and that the language chosen to effect that object was so chosen because of the mistake as to the manner of announcing such prices. We do not understand that relief from the consequences of a mutual mistake is confined to cases where the mistake was with reference to a past event, or to the present existence of some fact or thing. No sound reason appears why the doctrine should not equally apply where both parties by mistake expect a future event to occur and describe the subject matter by words which make the intent clear if the event does happen as expected, but which defeat the real intent if the event does not happen precisely in the manner expected. We think this case comes clearly within the doctrine.

There was no substantial conflict in the evidence on this subject. The president and secretary of the Cutting Company each testified that the wording of the contract was exactly as he intended it should be and that he intended to guarantee Peterson precisely as the clause provided. There was no contention that they did not intend this, as they understood the facts and conditions and effect of the words used. This was not the essence of the mistake. Neither of them disputed nor denied that he then expected that the opening prices of the association would be printed as usual or that he approved the words in consequence of that erroneous belief and expectation.

If they had declared that they did not then expect that the price list would be printed and that they approved the wording with that idea, it would be a virtual confession that they believed that the guaranty would be nugatory and intended to perpetrate a fraud upon the defendant if a lower price was fixed by the association without printing the price list. The mistake would then come within the class of mistakes described in section 3399 as "a mistake of one party, which the other at the time knew or suspected." The evidence shows that Oliphant informed the Cutting Company's officers that Peterson insisted upon a protection against the possibility of being bound to pay a price higher than the opening prices

fixed for the trade generally by the association. They do not deny this evidence. Hence they would be chargeable with knowledge that Peterson expected that the price list would be printed, and if they did not expect the same thing themselves, the case would come under the second class of mistakes mentioned in the said section. The use of the word ''printed,'' of itself indicates such expectation. The court below should have allowed the defendant to amend his answer and, upon the proof made, should have reformed the contract so as to make it express the real intention of the parties. There was evidence to the effect that the association did fix opening prices for that season for the goods in question, and that they were lower than those named in the agreement, the difference making the amount which Peterson refused to pay for the goods delivered. The matter of the reformation of the contract was therefore an important one to the parties and the judgment is prejudicial to the defendant.

The order is reversed.