[Civ. No. 4165.  First Appellate District, Division Two.—August 5, 1922.]

## S. L. KEY et al., Appellants, v. B. VIDOVICH et al., Respondents.

[1] VENDOR AND VENDEE—WRITTEN CONTRACT OF SALE—MISTAKE—ORAL EVIDENCE.—In an action to compel the repayment to the plaintiffs of a sum of money deposited as an advance payment on a purchase of real estate, and in which the defendants file an answer and cross-complaint in which they plead that through mistake the instrument as executed by the parties did not truly express their agreement, oral evidence is admissible to show whether or not a mistake had been made, notwithstanding such contract falls within the statute of frauds.

[2] ID.—COVENANT AGAINST ENCUMBRANCES — KNOWLEDGE OF VENDEES —ESTOPPEL.—Notwithstanding the vendees have knowledge of the existence of a contract executed by the vendor whereby the latter has agreed to sell and deliver all raisins produced on the premises to a certain association, which contract constitutes an encumbrance upon the property, that knowledge will not destroy the effect of the covenant contained in their contract of purchase whereby the vendor contracts to furnish a certificate of title showing the property to be free from encumbrances.

[3] ID.—ASSUMPTION OF ENCUMBRANCES — INTENT OF VENDOR—AGREEMENT OF VENDEES—MISTAKE.—The fact that the vendor had in-

---

1.  Parol evidence is admissible to show intention of parties to written contract, note, 17 L. R. A. 273.

Right of vendee to recover back payments made upon a contract for the purchase of land which does not satisfy the statute of frauds, notes, 105 Am. St. Rep. 793; Ann. Cas. 1914D, 471; L. R. A. 1916D, 468.

3.  Reformation of contract because of mistake of law as to its effect, note, 28 L. R. A. (N. S.) 900.

tended that the vendees should take the property subject to the encumbrance requiring the sale and delivery of all raisins produced thereon to a certain association and the vendees had knowledge of the existence of such encumbrance prior to their execution of the contract of purchase would not justify the reformation of the contract of purchase, on the ground of mistake, so as to express the intent of the vendor, where the vendees had not expressly agreed to take the property subject to such encumbrance.

[4] ID.—SUFFICIENCY OF TENDER.—The question of the formality or informality of the tender and demand of the vendees not having been raised at the time such tender was made, and thereafter the vendor having sold the property in question to a third party, it was no longer necessary that the vendees should again tender, or offer to tender, the remaining purchase payments before commencing an action to recover the money deposited as an advance payment on the purchase price.

APPEAL from a judgment of the Superior Court of Fresno County. C. E. Beaumont, Judge. Reversed.

The facts are stated in the opinion of the court.

Henry L. Meyers, G. L. Aynesworth and L. N. Barber for Appellants.

U. Grant Hayden for Respondents.

STURTEVANT, J.—The plaintiffs sued the defendants to compel the repayment to them of $1,000 theretofore deposited as an advance payment on a purchase of real estate. The defendants filed an answer and a cross-complaint and were awarded a judgment on their cross-complaint. The plaintiffs have appealed from the judgment.

The parties signed a paper in words and figures as follows:

"We, the undersigned, Charles Dubbs, and S. L. Key of the County of Fresno, State of California, hereby agree to purchase of and from B. Vidovich the following described real property, situated in the County of Fresno, State of California, to-wit:

"Lots Nos. 9 and 10 in Section 29, twp. 13 N. of Range 17 E. of M. D. B. & M. Base. Known as 40 acres in the Empire Colony, and belonging to said B. Vidovich. Furnish deed and Certificate of Title showing same free from incumbrance.

"For the purchase price of Thirty Five Thousand ($35,000) Dollars, payable as follows: One Thousand ($1000.00) Dollars cash on the execution of this contract, and the balance of Thirty-four Thousand ($34,000) Dollars to be paid Fifteen Days from March 10, 1920.

"In the event that we fail to make said payment of $34,000 on receipt of said Certificate of title said cash payment of $1000.00 is to be forfeited for non-performance of this contract.

"We agree to pay the taxes for the year 1920–1921.

"All horses and farming tools and implements that have been heretofore used on said ranch are to be part and parcel of said ranch.

"Possession of said premises is to be given to us five days after the final payment, as above stated, has been made, and we hereby agree that said present owner may occupy the house on said premises for a period of thirty days after said final settlement.

"Insurance policy on said property shall be transferred.

"(Signed)   CHARLES DUBBS.

"S. L. KEY.

"I hereby accept the terms in the sale of the above described property made by my agent, E. B. Wilson and agree thereto.

"B. VIDOVICH.

"LENI VIDOVICH.

"Dated: Fresno, California, March 10, 1920."

By their cross-complaint the defendants contended that the instrument above set forth did not express truly the contract as made by the parties and that the real contract made by the parties was as follows (the portions which were alleged to have been omitted by and through mistake are in italics):

"We, the undersigned, Charles Dubbs and S. L. Key, of the County of Fresno, State of California, hereby agree to purchase of and from B. Vidovich the following described real property, situated in the County of Fresno, State of California, to-wit:

"Lots Nos. 9 and 10 in Section 29 Twp. 13 N. of Range 17 E. of M. D. B. & M. Base. Known as 40 acres in the Empire Colony, and belonging to said B. Vidovich. *Said B.*

*Vidovich* to furnish deed and Certificate of Title showing same free from incumbrance, *except taxes for the year 1920, water right agreement with Fresno Canal and Land Corporation, recorded in Volume 'Y' of Covenants page 137, Records of Fresno County, California, and agreement to sell and deliver raisins produced on said premises to the California Associated Raisin Company, recorded in Volume 95 of Covenants page 281, records of said Fresno County, all of which incumbrances we agree to assume.*

"For the purchase price of Thirty-five Thousand ($35,000) Dollars, payable as follows: One Thousand ($1000) Dollars cash on the execution of this contract, and the balance of Thirty-four Thousand ($34,000) Dollars to be paid Fifteen Days from March 10, 1920.

"In the event that we fail to make said payment of $34,000 on receipt of said certificate of title said cash payment of $1000 is to be forfeited for non-performance of this contract.

"We agree to pay the taxes for the year 1920–1921.

"All horses and farming tools and implements that have been heretofore used on said ranch are to be part and parcel of said ranch.

"Possession of said premises is to be given to us five days after the final payment, as above stated, has been made, and we hereby agree that said present owner may occupy the house on said premises for a period of thirty days after said final settlement.

"Insurance policy on said property shall be transferred.

"(Signed)   CHARLES DUBBS.
"S. L. KEY.

"I hereby accept the terms in the sale of the above described property made by my agent, E. B. Wilson and agree thereto.

"B. VIDOVICH.
"LENI VIDOVICH.

"Dated: Fresno, California, March 10, 1920."

The trial court made findings in which it specifically reformed the contract as the defendants claim the contract should have been worded and thereupon it rendered a judgment enforcing the same.

[1] The appellants contend that the contract was one that fell within the statute of frauds and that oral testi-

mony should not have been permitted to alter the same. The general rule is as appellants contend, but as the defendants had interposed a cross-complaint based on the ground of mistake, although the contract in question fell within the statute of frauds, oral testimony was admissible to show whether or not a mistake had been made. (*F. P. Cutting Co.* v. *Peterson,* 164 Cal. 44 [127 Pac. 163].)

Commencing a few days before March 10th and extending over nearly the whole of the rest of the month of March, the parties and their agents were discussing the real estate deal evidenced at least in part by the instrument herein first set forth. There is much testimony in the record to the effect that the plaintiffs were informed at an early date that the defendants were members of the California Associated Raisin Company; that they were also informed that the defendants had been complying with the terms of their contract and were members in good standing. There is no evidence that the plaintiffs objected to the raisin contract except as is hereinafter mentioned. As from the beginning, the parties discussed two different purchase plans. One plan was that the transaction should be for cash. The other plan was that the sale should be made on a cash payment at the time of the sale and the balance to stand as a lien, and, in the latter plan the total sales price was to be higher than in the cash plan. There is no testimony in the record that the plaintiffs ever expressly agreed, orally or in writing, to take the property for a stated consideration subject to the raisin contract. Just before the paper was signed, the vendor and the vendees commenced to reach agreements regarding the various covenants. Thereupon Mr. Wilson, the agent of the vendor, commenced to make notes regarding the covenants to be inserted in the contract of sale. Later, when all of the covenants seemed to have been agreed upon, he took his notes to a typist of his own selection, and in a few minutes returned with a formal typewritten contract. With regard to the passages, inserted in the contract by the decree made by the trial court, there is no evidence that Mr. Wilson had taken down any notes on those subjects, nor that the paper as written and produced by him omitted any provisions that the parties had orally expressly agreed to. The notes made by Mr. Wilson were not produced, nor were the same called

for. Although seven or eight persons were present at the various conversations that were held prior to the execution of the written instrument, no one of the witnesses testified that the vendees had expressly agreed at any time to take the property subject to the raisin contract. The most that was testified to in that behalf was that by reason of certain statements made it manifestly appeared that the vendees knew of the existence of said contract at the time that the contract of sale was executed.

On the twenty-fifth day of March, the date that the final payments were to be made, the attorney for the vendees called attention to the fact that the raisin contract was so worded as to constitute it an encumbrance. When he stated the point the vendor and the vendor's agents controverted the legal proposition that such a contract did constitute an encumbrance. Then it was for the first time that a controversy arose as to whether or not the written instrument signed by the parties fully and fairly stated the agreement which they had made.

In view of the pleadings in this case it is necessary for us to consider the effect of the evidence introduced as applicable to an action at law and as applicable to an equitable action brought to reform the executory contract hereinabove set forth. Taking up first the action at law, it may be argued that the trial court was entitled to receive in evidence the formal written contract and, for the purpose of interpreting the terms of that instrument, that the trial court would be entitled to refer to the circumstances under which it was made. (Civ. Code, sec. 1647.) **[2]** And it may be argued that, in exercising that power, it had the right to consider testimony showing that the purchasers signed the executory contract *knowing* of the existence of the raisin contract as an encumbrance. But such knowledge on their part would not destroy the effect of the covenant contained in the contract. In the case of *Funk* v. *Voneida,* 11 Serg. & R. (Pa.) 109 [14 Am. Dec. 617], the court was considering the effect of an encumbrance that had been duly recorded and of which the purchaser had constructive notice. At page 112 of 11 Serg. & R. (Pa.) (14 Am. Dec. 617), the court said: "It is no answer to his complaint, to say, it was his duty to search the record, and to have protected himself by some special covenant, against this spe-

cific encumbrance. It was no part of this case, that he had actual notice; but if he had, it could make no difference. The plaintiff covenanted against all encumbrances. The rule as to the vendee is, *caveat emptor;* so, let the vendor take care of the covenants he enters into. There was no special stipulation on the subject, and the plaintiff might safely rely on the general one. Notice of the mortgage would make no difference, as was determined in *Levit* v. *Witherington,* 1 Lutw. 317.'' In the case of *Smith* v. *Lloyd,* 29 Mich. 382, the court was considering a general covenant against encumbrances which expressly excepted a certain mortgage in the sum of $7,300. It transpired that the mortgage, principal and interest, amounted to $7,537. The purchaser contended that he was not liable for the excess. On page 388 the court said: ''In an action of covenant like this, I see nothing in the suggestion that this clause was sufficient notice to the purchaser, so that he might have ascertained the existing amount by due diligence. It is as usual, and certainly as competent, to covenant against *known* as unknown encumbrances or defects of title; and, with this covenant, the purchaser was not called upon for the exercise of any diligence.'' The above cases express the general rule. (Rawle on Covenants, 5th ed., sec. 88; 39 Cyc. 2054.)

[3] Taking up now the action to reform the deed on the claim of a mistake, the action for equitable relief rests solely on the evidence recited by us. The evidence which was insufficient to obtain relief at law was likewise insufficient to justify a reformation as for a mistake. There was some evidence that the minds of the parties had not met, but there was no evidence of a mistake.

[4] When the parties came together on March 25, 1920, it was apparently for the purpose of a final settlement. It appears from the record that the vendees took with them at least some moneys to make the final payment. The question of formality or informality of their tender and demand was not raised. The parties at once launched into a discussion of the raisin contract being or not being an encumbrance. In the early part of September, 1920, the defendants sold the property in question for $45,000. After that sale had been made it was no longer necessary that the vendees should again tender, or offer to tender, the re-

maining unpaid purchase payments before commencing their action.

For the reasons above stated the judgment is reversed.

Nourse, J., and Langdon, P. J., concurred.