[Civ. No. 7823. First Appellate District, Division Two.—June 26, 1931.]

BANK OF AMERICA OF CALIFORNIA (a Corporation), Appellant, v. F. B. GRANGER et al., Respondents.

Keyes & Erskine for Appellant.

M. Haynes, *in pro. per.*, A. H. Carpenter, Cross & Brandt and True Van Sickle for Respondents.

STURTEVANT, J.—The plaintiff sued to recover on certain alleged guaranties. The trial court made findings in favor of defendants and from a judgment entered thereon the plaintiff has appealed.

On April 26, 1927, and for some time prior thereto the Fernwood Lumber Company, a corporation, was transacting a lumbering business near Arcata in Humboldt County. The defendants were directors of that company. The First National Bank of Arcata, doing a banking business at Arcata, financed the lumber company and that company obtained all of its loans from that bank. On December 5, 1927, the lumber company obtained $3,000 and executed a demand note to the bank in that sum. That note was secured by a deed of trust under the same date. On March 3, 1928, the lumber company received from the bank the sum of $4,500 and executed its note payable August 1, 1928. That note was unsecured. On May 11, 1928, the lumber company received another loan in the sum of $3,500 and executed a note payable October 1, 1928.

On April 23, 1927, United Bank and Trust Company of California consolidated with French American Bank to form United Bank and Trust Company; on December 10, 1927, Security Bank and Trust Company purchased First National Bank of Arcata; on February 4, 1928, United Bank and Trust Company merged with Security Bank and Trust Company to form a merged corporation known as Security Bank

and Trust Company; on March 31, 1928, Humboldt Bank and Security Bank and Trust Company consolidated to form United Security Bank and Trust Company; and on November 28, 1928, United Security Bank and Trust Company consolidated with Bank of America to form Bank of America of California.

When the lumber company asked for the loan evidenced by the promissory note dated March 3, 1928, it was informed that it would be necessary for the lumber company to give the bank further security. The manager of the lumber company communicated that fact to the defendant F. B. Granger and on March 1, 1928, at his residence at San Leandro he executed a written guaranty, in the sum of $5,000, in favor of United Bank and Trust Company *of California*. It contains approximately 700 folios and among others a covenant as follows: " . . . the undersigned hereby guarantees the payment in United States gold coin to said bank of any and all sums of money which the said bank may have heretofore or may hereafter advance or loan to said corporation. . . . " After said written guaranty was delivered to the bank at Arcata the bank made the loan of $4,500 and received the promissory note dated March 3, 1928. Another guaranty in the sum of $5,000 was executed and delivered by M. Haynes on February 29, 1928. Another guaranty was executed by the defendant E. J. Thomas on March 19, 1928. The last-named instrument was in the sum of $8,000.

The plaintiff pleaded its case in three counts. In the first count it pleaded the execution and amount due on three promissory notes and the guaranty executed by the defendant M. Haynes. In the second count it pleaded the same facts except to set up the guaranty executed by the defendant F. B. Granger. In the third count it pleaded the same facts as the first count except to set forth the guaranty executed by the defendant E. J. Thomas. In each count there was inserted a paragraph as follows:

"That said contract of continuing guaranty was executed upon a printed form theretofore in use by said United Bank and Trust Company of California, all of the assets and properties whereof had by consolidation and merger, as hereinbefore alleged, become the property of Security Bank and Trust Company; that upon said form the name of the obligee therein was 'United Bank and Trust Company

of California'; that by reason of inadvertence and mutual mistake of the parties to said agreement the name printed upon said form remained unchanged; that said contract was made by and between Security Bank and Trust Company and said defendant, M. Haynes, and that the name of the obligee therein was understood by said parties to be Security Bank and Trust Company and it was intended by the said parties thereto, that the said printed form should be changed to conform thereto.''

The trial court made a finding negativing said allegations. The plaintiff contends that that finding is not sustained by the evidence. The court found that since the commencement of the action the trust deed theretofore executed by Fernwood Lumber Company has been foreclosed and that the first note has been paid off and that the second note was paid down to $3,737.44 and that on said second note there was due $189.34 as interest and accruing interest from October 28, 1929. As to the amounts due on the notes the parties do not quarrel about the findings made by the court. The entire controversy arises over the findings on the subject of the rights, if any, of the plaintiff growing out of said guaranty.

Before discussing the evidence given at the trial it may be stated that no one of the defendants had any personal loans. Except as herein mentioned, the Fernwood Lumber Company had no loan from any of the institutions herein named; and at no time was any question presented as to whether a loan should be obtained from an institution other than the one represented by Mr. Sorenson, who at all times was the cashier of the bank located at Arcata and the local representative of the entity of which that bank might at any time be a part. The defendant Mr. E. J. Thomas was president of the Fernwood Lumber Company and the principal actor in transacting the business of financing it. He testified that he executed as president each of the three notes. He did so to secure loans from the bank. In transacting the business in the first instance he held conversations with Mr. Sorenson. At times he was referred by Mr. Sorenson to the head bank located at New Montgomery and Market Streets in San Francisco. After the first note had been executed Mr. Sorenson asked Mr. Thomas for a continuing guaranty and on March 19, 1928, he signed one. At that time the company was

doing business with the United Bank and Trust Company. After talking to Mr. Sorenson regarding a loan and after Mr. Sorenson had asked for the guaranty it was Mr. Thomas' intention to give the bank—whatever its name was—such a guaranty as Mr. Sorenson requested. At the time he executed his guaranty it was his understanding that the name of the bank was United Bank and Trust Company. The witness Haynes testified that Mr. Thomas came to his office and discussed the needs of the Fernwood Lumber Company. At that time Mr. Thomas stated to him the substance of the conversation which he had held with Mr. Sorenson and that the latter required the execution of the guaranty. Mr. Haynes signed and when he did so it was his intention to sign the document for the United Bank and Trust Company. In stating that it was his intention to sign the guaranty for the United Bank and Trust Company the witness testified that it was his understanding that such was the name at that time of the bank of which Mr. Sorenson was the manager at Arcata. The witness further testified that at no time did he know the facts regarding the formation or merger of any of the banks. Mr. Granger testified that he knew that the Fernwood Lumber Company was doing business with the bank at Arcata. At the time he signed the guaranty it was his understanding that he was making his agreement with United Bank and Trust Company, the name called for in the paper. The witness testified that Mr. Thomas, the president of the company, was the one that was doing the business. Sometimes he was in San Francisco and sometimes in Arcata. But the witness was at San Leandro and did not have any active part in the transactions of it. He said he understood that the bank named in the guaranty signed by him was located at New Montgomery and Market Streets in San Francisco. Being again pressed as to whether it was his understanding that at the time he signed he was doing business with the bank located at New Montgomery and Market Streets (United Bank and Trust Company), the witness asked to see the document and then he read from the face United Bank and Trust Company of California. The witness in a later passage in his testimony again confused the two names. Before any of the guaranties were signed the witness and Mr. Thomas called at the bank at New Montgomery and Market Streets and there

interviewed Mr. McBride and discussed with him the making of the guaranties. After the guaranties had been executed and some time in 1929 the witness again called on Mr. McBride and attempted to negotiate a settlement of the witness' *pro rata* of the loan so received. The first time the witness went to the bank he met Mr. Duffy. Mr. Thomas went with him. Later they went again or Mr. Thomas went alone. This was before the guaranties were signed. Mr. Sorenson testified as to his official connection with the bank at Arcata. He testified that he received some of the documents from the head office in San Francisco, which was located at New Montgomery and Market Streets. The second loan was approved by the head office. The Thomas guaranty was signed in his presence. The Haynes guaranty he did not see until it had been executed and was forwarded to him. At the time the loan was made on December 5, 1927, Mr. Thomas and Mr. Haynes were present. When the question came up for further loans the witness referred the officers of the Fernwood Lumber Company to the bank in San Francisco. That conversation was held with Mr. Thomas and the witness directed him to call on Mr. Duffy. Mr. Duffy sent to the witness three guaranties in the sum of $8,000 each. It was one of them that was signed by Mr. Thomas in the presence of the witness. Mr. Thomas volunteered to forward one to Mr. Granger and one to Mr. Haynes. But those two instruments were not signed. Those documents had been forwarded to the witness by Mr. Duffy because the bank did not consider itself secured. He sent Mr. Thomas to the bank located at New Montgomery and Market Streets, but did not specially send him to Mr. Duffy. The guaranty signed by Mr. Haynes on February 29, 1928, was prepared and executed and thereafter was forwarded to the bank at Arcata. The one signed by Mr. Granger was received by the bank about March 12, 1928. The one signed by Mr. Thomas was signed on March 19, 1928, in the presence of the witness. The witness testified that he never heard there was a mistake in the form of the guaranty. The first loan made was made by the First National Bank of Arcata, the second loan was made by Security Bank and Trust Company, and the third loan was made by United Security Bank and Trust Company.

The first note was payable to the First National Bank of Arcata. The name of the bank was erased by some unauthorized person and United Security Bank and Trust Company was written in. The second note was made payable to Security Bank and Trust Company. The third note was made payable to United Security Bank and Trust Company. It is not claimed that any one of the notes contained an error as to the payee. All three of the guaranties as written were in favor of United Bank and Trust Company *of California.* That corporation consolidated with the American Bank to form United Bank and Trust Company on April 23, 1927— about eight months before the first note was written. But, according to the terms of our statute, United Bank and Trust Company *of California* upon the completion of the consolidation becomes extinct. (Bank Act, sec. 31a. See Deering's Gen. Laws 1923, Act 652, p. 153 et seq.) ■ The question to be reviewed in this court is whether or not the contracting parties were consciously making these formal guaranties in favor of an extinct corporation or did they make a mistake. The respondents point to the foregoing evidence and stress the fact that no single person testified that a mistake was made in the use of any single word or phrase. But that fact is not controlling. (*F. P. Cutting Co.* v. *Peterson,* 164 Cal. 44 [127 Pac. 163].) At page 47, of 164 Cal., the court said: "The fact that the parties used the very words which they intended to use is not always sufficient cause for refusing relief of this character. There may be no mistake as to the words used or to be used, and at the same time there may have been a mutual mistake as to some other matter of fact affecting the meaning or application of the words, and by reason thereof the contract may not truly express the real intention of both parties, and in that case it may be revised and reformed at the instance of the aggrieved party and enforced accordingly, although the words were carefully chosen." Our statute provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of the party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." (Civ. Code, sec. 3399.) "For the purpose

of revising a contract, it must be presumed that all the parties thereto intended to make an equitable and conscientious agreement.'' (Civ. Code, sec. 3400.) ''In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be.'' (Civ. Code, sec. 3401.) Quoting again from *F. P. Cutting Co.* v. *Peterson*, at page 49 of 164 Cal. [127 Pac. 163, 165] : ''It is apparent from this evidence that the object to be secured by the clause in question was to put Peterson on an equal footing with other dealers in canned tomatoes, in case the association's opening prices, and the general market prices thereby fixed, should be less than those named in the contract.'' So in this case, from the evidence it is apparent that the object in making all three of the guaranties was to secure the bank at Arcata (by whatever name it should be known and whether it was an entity or a branch of some other bank) for loans to Fernwood Lumber Company (*Dolvin* v. *American Harrow Co.*, 28 L. R. A. (N. S.) 840, note). To hold otherwise is to hold that the bank officials were consciously making loans to a failing concern and instead of taking real security were taking guaranties in favor of a corporation extinct.

Again, looking back over the evidence hereinabove set forth, it is perfectly clear that no one of the parties at any time for any reason intended otherwise than that each guaranty should protect the payee of each note as and when written. The plaintiff contends that the first note became the property of the Security Bank and Trust Company when that company purchased the First National Bank of Arcata; and that by the acts of consolidation or merger the note became the property of the plaintiff. ▮ It also contends that the plaintiff had by the acts of consolidation and merger become the owner of the three guaranties and that it is entitled to sue on them. (Bank Act, secs. 31a and 31b; Deering's Gen. Laws 1923, Act 652; see, also, 5 C. J. 948.) The defendant Granger contends that the plaintiff has no such right because in terms the guaranties did not contain any word or words expressly extending their terms to this plaintiff. As we understand him, he contends that the documents were not transferable. In this contention we think

he is clearly in error. The plain language of the sections of the Bank Act is to the contrary. Furthermore, since the enactment of our Civil Code the common-law rule regarding the assignment of a guaranty has been materially modified. (*Reios* v. *Mardis,* 18 Cal. App. 276 [122 Pac. 1091]; 28 C. J. 942, 1011.)

█ On September 25, 1930, the plaintiff filed an amendment to its second amended complaint. The findings were filed the next day and contained findings on the issues so raised. The defendant Haynes states that the amendment was filed without an order or permission from the court and without knowledge or consent of the defendant Haynes. Such facts do not appear from the record before us. █ The same defendant contends that the guaranties did not cover loans that had been made prior to the execution of the guaranties. By the express language contained in those documents they did. By delaying its hand in enforcing the collection of the prior loan the bank suffered a prejudice which constituted a good consideration for the guaranties. (Civ. Code, sec. 1606.) █ The same defendant claims that no demand was made and that there was no proof to the contrary. No demand was necessary (Civ. Code, sec. 2807), and besides the trial court found that a demand was made and the defendant has not appealed.

█ Both defendant Haynes and defendant Thomas claim there was no consideration to support their guaranties. The former executed his guaranty on February 29, 1928. The bank made the second loan on March 3, 1928. That act was a sufficient consideration (Civ. Code, sec. 2793). The defendant Thomas executed his guaranty on March 19, 1928. When he promised to do so and whether before that date, and if so, how long does not appear. But a written guaranty imports a consideration and the record does not show there was none. Furthermore, the third loan was made May 11, 1928, and, by its terms, his guaranty extended to loans theretofore and thereafter to be made. In none of these statements are we taking into consideration the first loan for, as appears above, that loan has been repaid. Furthermore, the defendant Thomas had theretofore executed yet another guaranty in the sum of $5,000, which was returned to him when he executed the second one. That act also constituted a consideration. █ These two defendants made

the further claim that the guaranties could not be reformed because of the provisions of the statute of frauds (*Grant* v. *Naylor*, 4 Cranch (U. S.), 224, 603, see, also, Rose's U. S. Notes]). But since the enactment of section 1856 of the Code of Civil Procedure, that decision is not controlling in this kind of an action (*Key* v. *Vidovich*, 58 Cal. App. 710, 714 [209 Pac. 375]).

■ The defendant Thomas contends that the defendants knew whom they were guaranteeing in that they intended to guarantee only the United Bank and Trust Company of California. We do not think that is the record. However, for the purposes of this decision, assuming such to be the record, then the only effect is to rest the case on a harsher clause contained in our statute. There is certainly no evidence that the plaintiff or its predecessors in interest actually intended to obtain guaranties running in favor of a corporation extinct. Addressing itself to a similar contention in the case of *F. P. Cutting Co.* v. *Peterson, supra,* on page 50 of 164 Cal. [127 Pac. 163, 165], the court said: "If they had declared that they did not then expect that the price list would be printed and that they approved the wording with that idea, it would be a virtual confession that they believed that the guaranty would be nugatory and intended to perpetrate a fraud upon the defendant if a lower price was fixed by the association without printing the price list. The mistake would then come within the class of mistakes described in section 3399 as 'a mistake of one party, which the other at the time knew or suspected'." The point is without merit.

■ While the witness Granger was being examined by the plaintiff he was asked: "What was your intention with respect to the name of the bank to which that guaranty was running at the time you signed it?" Again, he was asked: "Did you know at the time you signed this agreement the exact name of the institution?" To those questions objections were interposed and the objections were sustained. These rulings were erroneous. The very issue before the court was that of ascertaining, among other things, what were intended to be the legal consequences of the several guaranties. (Civ. Code, sec. 3401.) That issue could not properly be determined until all such matters were gone into and the evidence was fully before the court.

For the reasons hereinabove indicated the judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 25, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1931.