TEUTSCH, Appellant v. HVISTENDAHL, Respondent

(31 N. W.2d 566.)

(File No. 8921.  Opinion filed October 28, 1947.)

**Everett A. Bogue,** of Vermillion for Appellant.

**Byron S. Payne,** of Pierre, for Respondent.

PER CURIAM.

After careful consideration of the arguments of counsel upon rehearing, the court adheres to the opinion reported in 72 S. D. 48, 29 N. W.2d 389.

SICKEL, J., dissents.

SICKEL, J. (dissenting).  Teutsch and Hvistendahl entered into a contract for the purchase and sale of residence property in Vermillion.  The contract described Lot 7, Block 3, Bigelow's University Addition.  When Teusch discovered that the west 6.7 feet of the house stood on Lot 8 he brought an action to reform the contract so as to include the East Half of Lot 8, on the ground of mistake. The circuit court denied reformation and was affirmed in this court.  Teutsch v. Hvistendahl, 72 S. D. 48, 29 N. W.2d 389.  This case is now before the court on rehearing.

The grounds for reformation, as stated in SDC 37.0601, are three-fold: First, fraud; second, mutual mistake, and third, mistake of one party which the other at the time knew or suspected.  This statute is substantially the same as the equity rule stated in Pomeroy's Eq. Jur., 5th Ed., Vol. 4, § 1376, as follows: Equity has jurisdiction to reform written instruments in but two well-defined cases: 1. Where there is a mutual mistake,—that is, where there has been a meeting of minds,—an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form does not express what was really intended by the parties thereto; and 2.  Where there has been a mistake of one party accompanied by fraud **or** other inequitable conduct of the remaining parties."

The decision of the circuit court and the former opinion of this court seem to be based on the proposition that both parties understood and agreed to the description contained in the deed, and had never reached an understanding upon the purchase and sale of any part of Lot 8.

The rule, well established, is that when the description is stated in a contract according to the intent of both parties, but there was a mistake of both parties in respect to the boundaries of the land to which that description applied there is a mutual mistake of fact which will justify reformation. Crookston Imp. Co. v. Marshall, 57 Minn. 333, 59 N. W. 296, 47 Am. St. Rep. 612. That case was approved and the rule was restated by the Minnesota Supreme Court in Chilstrom v. Enwall, 168, Minn. 293, 210 N. W. 42, 43, as follows: "But, when the facts are clear, deeds may be reformed not only where the mistake consists in the omission or insertion of language contrary to the intention of the parties, but also in cases where they understood the language used therein but believed the description to correspond with the actual boundaries intended and were mistaken therein." The rule established by these two cases is the basis of the text in 45 Am. Jur., Reformation of Instruments, § 38.

Williston on Contracts, § 1550, states that "where a deed conveys a smaller estate or gives a smaller right than was intended, or inadequately described an estate or right, the grantee is allowed a reformation of the instrument so that it shall express the real intention."

The evidence in this case shows that the lots belonged to Hvistendahl's mother who built the house some thirty years ago. Hvistendahl visited his mother at the house almost every year. He inherited the lots from her eight or nine or ten years ago, and was in possession of them until Teusch took possession under the contract in question here. The vendor knew at all times that the tract consisted of three lots and that their combined width extended from the street to the alley. He knew the size of the house and its location upon the tract. He also knew better than Teutsch that the area upon which the house stood was identified and its boundaries marked by grade, lawn, trees and shrubbery,

as approximately the east half of the tract. Ericson was the agent of the vendor, not to enter into a contract of sale on behalf of the owner, but to find a person who was able, willing and ready to buy the residence property on the owner's terms, and to show the property to prospective purchasers. The vendor wrote Ericson "I am holding the property at $3500, that is for the house and the lot it stands on * * *. Should you find someone interested," etc. Again he wrote the agent "If the parties are others, with whom I have no contact, I will take $3600 for the house and 1½ lots * * *." At another time the vendor wrote his agent "I am enclosing herewith one copy of contract for sale of my house there in Vermillion." This evidence establishes the following facts: That the vendor intended to sell the house including the ground on which it stands and all the ground contiguous thereto and which is necessary to the ordinary enjoyment of the house; that the vendor understood that this area consisted of one and a half lots, which could be no other than Lot 7 and the East Half of Lot 8. This description corresponds with the visual boundaries of the residence property. It was the same area for which the vendor authorized his agent to find a purchaser, which the agent exhibited and offered to the purchaser, and which the purchaser intended to buy. There was no occasion to point out or inquire about the boundaries because they were obvious to both. The agent made a mistake in assuming and believing that Lot 7 described the property which the owner intended to sell, and by omitting the East Half of Lot 8 from the contract. The purchaser made a mistake in assuming and believing that Lot 7 described the property he intended to buy. When the contract was sent to the vendor he signed it, accepted the initial payment, and placed the purchaser in possession of the house and surrounding area. These facts were sufficient to show mutual mistake of the parties, and entitled the purchaser to reformation of the contract.

The vendor now says that he made no mistake when he signed the contract describing Lot 7 only. The circuit court found: "The parties were mutually mistaken as to the location of the said house at all times while entering into the said

contract to purchase." This court said in the former opinion: "It is certain that the parties intended the contract for the purchase and sale of the house and a surrounding plot of ground." These findings are supported by defendant's evidence showing that he intended to sell "the house and the lot it stands on"—"the house and 1½ lots." But even if the vendor's contention that he made no mistake in signing the contract were true, it is difficult to see how his position would be improved thereby. The vendor did one of two things: Either he made the same mistake that was made by the purchaser and the agent, or he saw the mistake and took advantage of it without informing the purchaser. In the latter case there was a mistake on the part of the purchaser, and bad faith or inequitable conduct on the part of the vendor. According to the statute, SDC 37.0601, and the rule in equity, mistake of the purchaser which the vendor at the time knew or suspected amounts to bad faith or inequitable conduct on the part of the vendor, and this is also ground for reformation of the contract whether such conduct amounts to fraud or not. Pomeroy's Eq. Jur., 5th Ed., Vol. 4, § 1376; Fotheringham v. Lockhart, 30 S. D. 394, 138 N. W. 804; Cox v. Beard, 75 Kan. 369, 89 P. 671; Gavin v. Johnson, 131 Conn. 489, 41 A.2d 113, 156 A. L. R. 1130; Hugo v. Erickson, 110 Neb. 602, 194 N. W. 723; Comment on Webster v. Stark, 10 Tenn. 406 in 149 A. L. R. 751.

It has been suggested that the purchaser has, or may have, the remedy of cancellation in this case. Reformation is one of the oldest branches of equity jurisdiction. The right to reformation came into existence only because the common law remedies were inadequate or unavailable. It modifies a written contract so as to express the intentions of the parties thereto, and the contract is then enforcible as reformed. According to the law of reformation the purchaser is entitled to his bargain. Cancellation is wholly inadequate. It terminates the written contract and leaves both parties in the position they would occupy if no contract had ever been made. Furthermore, cancellation requires mistake by one party or the other. The original opinion in this case states: "It is the position of the vendor that because of a mutual misapprehension as to the location of the house,

the parties agreed upon the purchase and sale of Lot 7; they expressed their agreement in their written contract; and their minds never met on any other or different bargain. In our opinion the position of the vendor and the quoted finding of the court and its judgment are supported by the evidence." According to this declaration it appears that there was no mistake by either party in regard to the terms of the contract and consequently no ground for cancellation exists. So the purchaser finds himself in this position: He is not entitled to reformation nor even cancellation of the contract; he owns no part of Lot 8, nor does he own that part of the house which stands upon it. He cannot move the house. He can extricate himself from this dilemma only by the purchase of a part of Lot 8 on the vendor's own terms.

For the reasons herein stated it is my opinion that the judgment of the circuit court should have been reversed.