ESSINGTON, Plaintiff and Respondent v. BUCHELE, Defendant and Appellant and ESSINGTON et al., Defendants and Respondents

(115 N.W.2d 129)

(File No. 9947. Opinion filed May 17, 1962)

**Louis Loken, Jr., Austin, Hinderaker & Hackett,** Watertown, for Appellant.

**Campbell & Miller,** Aberdeen, for Respondents.

RENTTO, P.J. This action concerns the title to a farm near the town of Butler in Day County.

Prior to 1943 one Gottlieb Buchele owned it and lived thereon with his wife Annie and son Bennie. In addition to the son they had four daughters, the defendants-respondents above named. In that year the parents retired and the son took over the management of the farm under an arrangement with them which obligated him to support them from the income of the farm, and furnish them all of their requirements including expenses of illness, last sickness and funeral. In 1945 the son married the defendant, Florence Buchele. His parents then moved to a house which they owned in Butler. Shortly thereafter the father died but before his death he had conveyed the farm to his wife.

After taking over the farm Bennie supported his parents, paid their real and personal property taxes, and the expenses of his father's last illness and burial. In addition he expended substantial sums in having a well drilled on the farm and insulating its dwelling house and wiring the premises for electricity. Following the death of his father he continued to pay the living expenses of his mother including hospital and medical expenses incurred by her when she suffered a broken leg in 1947 and again in 1952.

On July 19, 1948 the mother executed a deed conveying the farm to her son. It was prepared by a lawyer and contained the following provisions:

"The within conveyance is made, however, subject to the following conditions, which are conditions precedent to the vesting of title hereby granted; that the grantee shall pay to the following people, sisters of the grantee, the following sums:

"To Mrs. Wilbert Petrich (Lila Buchele) of Denver, Colorado, the sum of $600.00

"To Mrs. Art Petrich (Ellen Buchele) of Webster, South Dakota, the sum of $600.00

"To Mrs. Earl Heinz (Viola Buchele) of Bothell, Washington, the sum of $600.00

"To Mrs. Orville Essington (Arline Buchele) of Webster, South Dakota, the sum of $600.00."

After its execution she handed the deed to the grantee and told him the property was supposed to be his after her death and after he had paid each of his sisters $600, and that he was to keep her papers until she passed away and then he could have the farm. At the same time 'she executed a deed conveying the house in Butler to her four daughters and delivered it to Bennie. The court found that the deed to the farm was executed to carry out the understanding and arrangement under which the son was to have it after his mother's death.

Bennie died on May 27, 1959 leaving as his only survivor his wife Florence. After the funeral his four sisters tried unsuccessfully to recover the deed to the farm from his widow. She did, however, give them the deed to the house in Butler. On June 8, 1959 they and Bennie's widow entered into an agreement, prepared by a different lawyer, whereby Bennie's widow recognized his responsibilities under the deed of July 19, 1948 and agreed that she would pay $30 a month for the care and maintenance of Annie Buchele so long as the said Annie Buchele should live and the cost of her sickness, hospitalization and funeral. In addition she agreed to pay to each of the daughters $600 on the death of their mother. On June 19, 1959 she recorded the deed to the farm.

After the execution of this agreement Florence Buchele tendered to Ellen Petrich, one of Bennie's sisters, who was then caring for her mother, Annie Buchele, the $30 monthly payments for her support. For a while she accepted these payments but later on refused them. In June 1960 Annie Buchele was hospitalized and died on July 10, 1960. Florence Buchele is ready and willing to pay the funeral expenses of Annie Buchele and the cost of her illness and

burial together with all sums due for her support and has tendered and offered to pay the same.

In this action plaintiff asserts that the deed of July 19, 1948 constitutes a cloud on the title to the farm and asks that it be cancelled. The defendant Florence Buchele resists such effort and by her answer, counterclaim, and cross complaint, advances the claim that the payment to Bennie's sisters of the amounts mentioned in the deed was not intended as a condition precedent to the vesting of the title thereby conveyed. She alleges that the inclusion of this language in the deed resulted from an error by the lawyer who prepared it, and contends that the parties intended only that the grantee covenant to pay such amounts to his sisters. She asks that the intention of the parties be effectuated by interpreting the condition as a covenant or by reforming the deed to eliminate it. The trial court concluded that the deed contained a condition precedent to the vesting of title in the grantee which was never performed, making the deed void and that it was not subject to reformation and entered judgment quieting plaintiff's title. From this the defendant, Florence Buchele, appeals.

■ The trial court acted properly in refusing to interpret the language of the deed as urged by appellant. The term condition precedent is not an uncertain expression. It is defined in SDC 47.0108 as "one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." The rule in this state is that interpretation may not be employed to contradict or nullify express terms of a contract. Eggers v. Eggers, 79 S.D. 233, 110 N.W.2d 339. When such is the relief desired it must be sought through reformation.

■ When reformation is sought upon the grounds of mistake the right to the remedy stems from the fact that the minds of the parties met on the terms of the bargain they intended, but because of mistake the writing fails to express that intention. When granted the court does not

make a contract for the parties. It merely conforms the writing to the antecedent expressions on which the parties agreed. Teutsch v. Hvistendahl, 72 S.D. 48, 29 N.W.2d 389; 72 S.D. 195, 31 N.W.2d 566; Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250; Craig v. National Farmers Union Automobile and Cas. Co., 76 S.D. 349, 78 N.W.2d 464; SDC 1960 Supp. 37.06.

■ If by reason of a mistake of law, the legal effect of the words in which a contract or conveyance is expressed is different from that on which the parties were agreed, reformation is a proper remedy. Corbin on Contracts, § 614. This is so even when the words of the contract are exactly as intended by both parties. Restatement, Contracts, under Sec. 504, lists this illustration:

> "A contracts with B to guarantee certain debts due by C to B. The words of the contract are exactly as intended by both parties, but both understand that the legal effect of the words is to impose only a guarantee of collectibility. The writing will be reformed to express that understanding."

This also is the effect of SDC 1960 Supp. 37.0602 which provides that: "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be." See F. P. Cutting Co. v. Peterson, 164 Cal. 44, 127 P. 163; Bank of America of California v. Granger, 115 Cal. App. 210, 1 P.2d 479.

The statement of this court in Korte v. O'Neill, 34 S.D. 241, 148 N.W. 12, reveals the reason for the rule. It is there written:

> "But here we have a contract, full and explicit in all its terms; the parties thereto willed to reduce such contract to writing; that which they willed to do was not accomplished, owing to the

> ignorance of all parties, including the party who drafted the contract, as to what was necessary to be included in the writing. What reason can possibly be advanced why equity should not carry out the will of these parties, even though in order to do so it must reform the writing? If the writing is not sufficient to carry out the intent of the parties, then it is as much a contract entered into without the consent of the parties thereto as though the mistake had been one of fact."

This was said concerning a writing in which the descriptions were indefinite and uncertain, but we think it equally pertinent where the claimed mistake of the parties is as to the legal effect of the words used to express their intention.

■ On the question of reformation the critical issue tendered by the pleadings and the evidence was whether the legal effect of the terms of the deed was different than intended by the parties. It is the only substantial issue involved. A finding that it was different than intended was essential to appellant's right to prevail on that theory. She proposed a finding to that effect which was rejected. Moreover, the court did not make a finding that it was not different, nor does its decision otherwise clearly indicate that this issue was passed on by the trial court. McKenna v. Whittaker, 9 S.D. 442, 69 N.W. 587. As a result the appellant is handicapped in presenting her appeal as are we in our review of it. Davison v. Kellar, 35 S.D. 285, 152 N.W. 106.

The failure to find on that issue leaves the record insufficient. Taylor v. Vandenberg, 15 S.D. 480, 90 N.W. 142; Virgil State Bank v. Miller, 36 S.D. 23, 153 N.W. 904. In Ellens v. Lind, 65 S.D. 620, 277 N.W. 40, this court said: "When issues of fact are triable by the court, the parties are entitled to a finding of fact upon each material issue of ultimate fact properly presented by the pleadings." This duty of the trial court is mandatory. Since a finding on such issue was necessary to a determination of the action,

the court's failure or refusal to find on it is error requiring a reversal of its judgment. Hyde v. Minnesota, D. & P. Ry. Co., 24 S.D. 386, 123 N.W. 849; Ellens v. Lind, supra.

The cause is remanded to the trial court to make findings of fact upon all material issues, and upon such findings and the conclusions based thereon to make and enter judgment accordingly. This to be done upon the present record without a new trial or other proceedings below.

All the Judges concur.