BEDFORD, Respondent, v. CATHOLIC ORDER OF FORESTERS, Appellant

(44 N. W.2d 781)

(File No. 9128. Opinion filed November 28, 1950)

**Danforth & Danforth,** Sioux Falls, for Defendant and Appellant.

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Plaintiff and Respondent.

ROBERTS, J. This is an action brought by the plaintiff against the defendant to recover on a certificate of insurance issued by the defendant to Fred J. Bedford, husband of the plaintiff, wherein the latter was named as beneficiary.

· The defendant is a fraternal benefit corporation organized under the laws of the state of Illinois with its principal office in Chicago. Plaintiff alleged in substance that on October 2, 1931, defendant issued to the insured a certificate effective on and after February 20th, 1917, under terms and conditions applicable to the twenty-year payment plan in the sum of $1,000, payable in the event of his death to plaintiff; that the insured died on May 22, 1947;. that insured at that time was in good standing and the insurance certificate was in full force and effect; and that defendant has refused to make payment of the amount due under the contract.

The defendant answered alleging that decedent then a resident of Sherburn, Minnesota, applied for membership and received a benefit certificate on February 20, 1916; that decedent made written application on October 2, 1931, for an ordinary life certificate in lieu of the benefit certificate; that in consideration of the issuance of a new insurance certificate decedent in the application waived all rights under the original certificate and agreed to conform with and abide by the constitution, rules and regulations of defendant order; that the application was approved and there was issued by defendant a new certificate based upon a fixed rate on an ordinary life certificate; that if a twenty-year payment certificate was issued it. was because of inadvertence and oversight in writing the certificate; that the last monthly assessment paid by insured was in July, 1933; that

the reserve accumulation automatically applied, as provided in the actual agreement of the parties, to the payment of assessments was sufficient only to continue the insurance in force until March 31, 1942; that written notice that the insurance would terminate on that date was given the insured on January 8, 1942; that the error and mistake was a mutual one; that the certificate of insurance applied for duly expired and terminated long before the death of Fred J. Bedford; and that no insurance of any kind was in force at the time of his death. There is a cross complaint by appellant setting forth that there was a mutual mistake in writing the insurance and asking for reformation and determination of the rights and obligations of the parties accordingly. The reply was, in effect, a general denial.

The case was tried to the court and judgment was rendered in favor of the plaintiff. From this judgment defendant has appealed.

The application of October 2, 1931, signed by defendant contains the following recitals: "I, the undersigned * *. * holding benefit certificate No. 443,563 for $1,000 do hereby make application to exchange said certificate for a new ordinary life certificate for $1,000 dated February 1917, at age 19, and I warrant that all payments on my present certificate have been made up to date." The application states that the monthly rate at age 19 on the new certificate is $1.11 and there is appended to the application a statement of the secretary of the local order reciting that he received from the applicant the $1.11 mortuary payment for the month of October "in connection with request for exchange to ordinary life certificate."

There is no question but that the monthly mortuary rate applicable to the insurance applied for was $1.11. The monthly rate effective at the time of the application for a twenty-year payment life certificate for $1,000, at age 19, was $1.68. From the testimony of an officer of defendant insurer it appears that when a member applied for a new certificate the insurer took "into consideration the number of months and years that the member had paid under the old rate, the amount of reserve he had accumulated, and would then take into consideration his present age, and the

age at original entry, and * * * would back date the certificate as far as the reserves would carry it." There was received in evidence photostatic copies of defendant's records pertaining to the insurance in question. It appears from such records that the certificate held by insured was classified as an ordinary life certificate. An actuary of the defendant testified relative to the premium loan account as follows:

"Q. Does that card indicate the time and date upon which Fred J. Bedford was placed in the premium loan? A. It does indicate the date of July 1, 1933.

"Q. And does it indicate the amount of reserve that was standing credited to his benefit certificate as of the date he was placed on the premium loan? A. The reserve is only calculated in these cases when the indebtedness approaches the full reserve. A running account is maintained of all credits and debits, and, periodically, the reserve is calculated to compare with the amount of indebtedness. When the indebtedness approaches the amount of the reserve, it is then calculated monthly so that the Foresters are able to determine accurately the date of expiry, that is, when the indebtedness equals or slightly exceeds the reserve.

"Q. Has that been done in this case; and is it so indicated on this card? A. It has.

"Q. And it indicates——? A. That this member's insurance was terminated March 31, 1942, at which time the indebtedness equalled the reserve."

On the other hand, it is undisputed that a reserve fund computed upon the basis of a twenty-year payment life certificate would have continued the insurance in force and effect until the death of the insured.

The defendant contends that the trial court erred in its refusal to find that there existed a mutual mistake and that the same constituted an equitable defense to plaintiff's claim.

General rules applying to reformation of other written contracts apply to contracts of insurance. Severson v. Home Insurance Co., 51 S.D. 293, 213 N.W. 726, was an action to reform a fire insurance policy and to recover there-

on. It recognized the applicability of the provisions of SDC 37.0601 to insurance contracts. That section reads: "When through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so. as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." Under these provisions, mistake by one party and knowledge of the mistake by the other will justify relief as fully as mutual mistake. It was also ruled in that case that the burden rests upon the party seeking reformation to prove his case by clear, unequivocal and convincing evidence.

█ The principles stated have application to the present controversy. In 46 C.J.S., Insurance, § 1466, it is stated: "As in the case of other policies of insurance * * *, a certificate of mutual benefit insurance may be reformed in equity so as to make it conform to the actual agreement of the parties, even after the death of insured, where there has been a mutual mistake or fraud or inequitable conduct".

█ Plaintiff's counsel argues that if defendant made a mistake in issuing the twenty-year payment life certificate, there is no evidence that insured knew such fact. The court in Columbian Nat. Life Ins. Co. v. Black, 10 Cir., 35 F.2d 571, 574, 71 A.L.R. 128, had before it a similar contention. There the insured applied for insurance on the ordinary life plan and through a printer's error a policy containing provisions appropriate for an endowment policy was issued. Discussing the question of reformation, the court said: "While courts are properly reluctant to alter the terms of a written engagement, even in equity, and do not do so unless the proof is clear and convincing, we are of the opinion that the uncontradicted and indisputable facts in this case require the interposition of equity. It is true the defendant on the stand and in his letters denies any mistake on his part. But his actions speak louder than his words. He applied for an ordinary life policy; without any quibble, and in response to his application, he received a policy that mani-

festly was in error. He only paid for an ordinary life policy. When he received the policy he either did or did not notice the error. If he did not notice it, the mistake was mutual. If he did notice it and said nothing, he was guilty of such inequitable conduct as to amount to fraud."

Prudential Ins. Co. of America v. Deane, et ux., 26 Del. Ch. 255, 27 A.2d 365, was a case where the application signed by insured requested issuance of a whole life policy designating a type of policy under which premiums are payable during the entire life of the insured, but through error of insurer's employees there was delivered a twenty-year payment life. Insured contended that this policy was the kind agreed upon and he knew of no mistake in connection with the policy issued. The court held that it was manifest from the contents of the signed application and a review of the record that the parties had in mind a whole life policy, which, it was understood and agreed, the insurer would issue upon acceptance of the application.

See also Buck v. Equitable Life Assur. Soc. of the United States, 96 Wash. 683, 165 P. 878; Mates v. Penn Mutual Life Ins. Co., 316 Mass. 303, 55 N.E.2d 770, 771; Neary v. General American Life Ins. Co., 140 Neb. 756, 1 N.W.2d 908; Hibbard v. North American Life Ins. Co., 192 Wis. 315, 212 N.W. 779; Schmidt v. Prudential Ins. Co., 235 Wis. 503, 292 N.W. 447; Metropolitan Life Ins. Co. v. Oseas, 261 App. Div. 768, 27 N.Y.S.2d 65; Berry v. Continental Life Ins. Co. of Mo., 224 Mo. App. 1207, 33 S.W.2d 1016.

Defendant relies on Equitable Life Assurance Society v. Darr, 64 S.D. 355, 266 N.W. 721, to sustain the judgment below. In that case the insurer inserted in the policy by mistake a rider providing for a waiver of premiums in the event of disability. The insurer sought to have the policy reformed after the insured had been totally and permanently disabled. The trial court found that there was no mistake on insured's part. The evidence did not as a matter of law impel a contrary finding and this court by per curiam opinion affirmed the judgment below.

The records of the insurer including the signed application clearly indicate what was intended. The twenty-

year payment life certificate manifestly does not express the intention of the parties. If a mistake favoring the insured had been made, clearly the insurer would have been bound in equity and good conscience to correct the error and upon refusal to do so insured would have been entitled to reformation. Whether a mistake is in favor of or against the insured, equity may afford relief, if as we have indicated the party seeking relief proves his case by clear and convincing evidence. The mistake constituted an equitable defense to plaintiff's claim and the indisputable facts prevent recovery.

The judgment appealed from is reversed and the cause is remanded with directions to enter judgment for the defendant dismising the action.

All the Judges concur.