CLARK, Respondent v. Bergen et al., Appellants

(59 N. W.2d 250)

(File No. 9322. Opinion filed June 11, 1953)

**John E. Walsh, James T. Goetz,** Yankton, for Plaintiff-Respondent.

**Frank Biegelmeier,** Yankton, for Defendants-Appellants.

ROBERTS, P. J. The Blacktop Construction Company of Billings, Montana, entered into four contracts with the State of South Dakota to furnish all the materials and do all the work required in bituminous surfacing of portions of the state trunk highway system. A contract thereafter entered into between Myrl Clark and Blacktop Construction Company reads as follows:

"A agreement between Black Top Construction Co., Billings, Montana and Myrl Clark, Tyndall, S. Dak., to furnish and deliver stockpiles on Project Numbers:

| | | |
|---|---|---|
| FAP 191 A Day County | 2331 | Tons |
| FAP 95 Faulk " | 6042 | " |
| A*B*C & FRM95 A | | |
| FAP's 84 & 184A Spink County | 3214 | " |
| & WPGH 184 A | | |
| FAP's 452 Potter " | 6854 | " |
| ABC & 127 Sully " | | |
| 154 (pt) Hughes " | | |

at the rate of $2.50 per ton.

"The stockpiles are to be placed 3 miles from each end of each project, and no further than 6 miles in between. Also agreed to add 400 tons chips to the four projects at the same rate as quoted above.

"Payments to be made within 10 days after Black Top Construction Co. receives it from the State Highway Department of South Dakota from its estimates or any partial payments and a final payment to be made within 60 days after completion of projects by Myrl Clark, Tyndall, S. Dak."

Myrl Clark instituted this action against the Blacktop Construction Company alleging that he delivered 18,841 tons in compliance with the terms of the contract; that defendants have made payments in the sum of $46,032.50; and that there is owing to the plaintiff the sum of $1,070. Defendants filed an answer and counterclaim denying the material allegations of the complaint and alleging that plaintiff was a subcontractor agreeing to furnish materials called for under the contracts with the state; that by reason of mutual mistake the written contract did not express the full and complete agreement of the parties with reference to the quantities of materials to be delivered and the basis of payment; and that plaintiff has been paid for the full number of tons as shown in the final estimates allowed by the State Highway Commission. Because of the alleged mutual mistake defendants sought reformation of the contract to express accurately and fully the intentions of the parties.

The trial court made comprehensive findings of fact. We quote such of the findings as appear pertinent to a consideration of the contentions presented by appellant: "That under the terms of the written contract sued on, Exhibit 1, the plaintiff was to deliver a total tonnage of 18,841 tons of road surfacing material on four projects; * * * that the approximate tonnage to be required and as set forth in the contract between the Blacktop Construction Company and the State of South Dakota * * was used as the basis for arriving at the tonnage of material that the plaintiff agreed to furnish the Blacktop Construction Company as stipulated in said agreement; * * * plaintiff was to furnish the tonnage called for in Exhibit 1 and was to be paid $2.50 per ton for each ton of material so furnished regardless of what payments the Blacktop Construction Company might receive from the State of South Dakota, the plaintiff not being a subcontractor of the Blacktop Construction Company, nor in any manner dependent upon the payments made by the State of South Dakota to the Blacktop Construction Company, the latter contracts being separate and distinct; * * * that on the Day County Project, the Faulk County Project, the Spink County Project, and the Potter, Sully and Hughes County Project two stockpiles, five stockpiles, three stockpiles, and six stockpiles, re-

spectively, were deposited by the plaintiff, and that the plaintiff did furnish, at least, 2,331 tons, 6,042 tons, 3,214 tons, and 6,854 tons on said projects, respectively, and that under the terms and provisions of Exhibit 1, an additional 400 tons of chips on the aforementioned projects was deposited by the plaintiff, which additional 400 tons of material was distributed among the four projects in approximately the same ratio that the stipulated tonnage of said projects bore to the total stipulated tonnage for all four projects; * * * that there is a technical difference in meaning between the words 'sealsand' and 'rock chips', or 'chips'; that no material deposited by the plaintiff was attempted to be, nor was segregated, or kept separate from any other material furnished by the plaintiff, nor did the Blacktop Construction Company attempt in any manner to segregate the material as to quality, or for any other reason, which was furnished by the plaintiff; * * * that the agreement, Exhibit 1, between the plaintiff and the Blacktop Construction Company stated the full and complete agreement between the parties, and there was no oral understanding or agreement in addition thereto".

The record contains twenty-six assignments of error. These assignments are argued under three propositions raising questions to to whether defendants were entitled to reformation of the contract, the failure of the court to find that plaintiff did not deliver materials of the quality specified in the contract, and the competency of the evidence to sustain the trial court's finding that plaintiff delivered the tonnage called for in the contract between the parties.

Defendants assert that it was orally agreed between the parties that plaintiff would furnish the materials necessary to complete the contract with the state and would be bound by the plans and specifications therein referred to including the basis of payment and that the actual agreement was not reduced to writing because of mutual mistake of the parties or the mistake of the defendants which the plaintiff at the time knew or suspected. There is usually in the background and merged in a written instrument a parol agreement. The writing controls and furnishes the requisite evidence of what was intended unless a court of equity on invocation of its powers finds that the minds of the contracting

parties did not meet upon the matters expressed in the writing and that the actual contract was other and different than therein expressed. The court only reforms and does not undertake to make a contract for the parties. As stated in Teutsch v. Hvistendahl, 72 S.D. 48, 29 N.W.2d 389, 391: "To establish a right to the remedy for which the statute [37.0601] makes provision upon the remaining ground of mistake, it must be made to appear that the minds of the parties met upon the terms of the bargain they intended to make, but because of mistake the writing fails to express that intention." The party seeking reformation must prove his case by clear, unequivocal and convincing evidence. Bedford v. Catholic Order of Foresters, 73 S.D. 511, 44 N.W.2d 781.

■ ■ The parties with R. J. Studer representing the Blacktop Construction Company and plaintiff representing himself participated in drafting the contract in question. There is testimony by the witness Studer that he and plaintiff assumed in their oral negotiations that plaintiff as a subcontractor would in all respects comply with the requirements of the state contracts and accept payments on the basis of estimates approved by the State Highway Commission, plus the 400 tons. While such was defendants' construction of their oral negotiations and of the writing, plaintiff did not so understand it. In other words, it does not appear that because of mistake the contract does not express the mutual intent of the parties.

Plaintiff under the terms of the contract which is the foundation of this action "agreed to add 400 tons chips to the four projects" at the price therein fixed. The contracts with the state permitted in plain and unmistakable terms defendant contractors to use in the construction work either "sealsand" or "rock chips". The defendants argue that plaintiff either contracted with defendants to perform part of the latter's contracts with the state and was bound by their terms and conditions or he contracted to furnish materials without reference thereto; that if plaintiff was a subcontractor he has received payment computed on the final estimates, but if he was not a subcontractor he cannot claim the benefit of the provisions in the state contracts permitting the use of either sealsand or rock chips. The contract between the parties

hereto required plaintiff to furnish "stockpiles" of materials for the four projects and specifically enumerated in the contract the projects and the amount of material to be delivered to each. The term "stockpiles" in the contract is unquestionably ambiguous in that the materials to be placed therein are not disclosed and was subject to explanation by the introduction of the main contracts tending fully to explain the meaning of the term. We think that when the contract is considered as a whole and in the light of the main contracts the parties intended merely to supplement the stockpiles and did not intend the delivery of separate quantities of sealsand and rock chips.

The final question as we have indicated relates to the competency of the evidence to sustain the court's findings. Defendants objected to admission in evidence of scale slips or memoranda because not properly identified. Plaintiff testified that he made computation of the total quantity of materials from these slips left at his field office by truck drivers employed in hauling materials to the several stockpiles. The truckloads on one project were weighed by a state employee who filled out the scale slips and handed them to the truck drivers. On the other projects, the truck drivers weighed their loads and filled out the scale slips. The slips for each stockpile were kept separately and it was the practice to carry forward on each scale slip the total weight of material in the stockpile.

The rules of the common law relating to the introduction in evidence of books of account and other records became so burdensome that relief was sought through legislation. In 1936, the Commissioners On Uniform State Laws recommended a statute on the subject. SDC 36.1001 is an adoption of such proposal and is known as the Uniform Business Records as Evidence Law. The section reads in part as follows:

> "A record of an act, condition, or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of informa-

tion, method, and time of preparation were such as to justify its admission."

■ ■ The section enlarges the operation of the business records exception to the hearsay rule and, as Wigmore says, brings "the rules of evidence nearer to the standards accepted in responsible action outside the courts." 5 Wigmore, Evidence (3d ed.) § 1530a; see, also, Loper v. Morrison, 23 Cal.2d 600, 145 P.2d 1; Reinecke v. Mitchell, 54 N.M. 268, 221 P.2d 563; Bethlehem-Sparrows Point Shipyard v. Scherpenisse, 187 Md. 375, 50 A.2d 256; H. F. Shepherdson Co. v. Central Fire Ins. Co., 220 Minn. 401, 19 N.W.2d 772; Crowley v. Goodrich, 114 Vt. 304, 44 A.2d 128, 162 A.L.R. 691. The scale slips in the instant case were made in the regular course of business and the sources of information, method and time of preparation were such in the opinion of the trial court as to justify their admission in evidence. In view of the broad language of section 36.1001, there was no error in admission in evidence of the scale slips and the evidence as a whole was legally sufficient to sustain the court's findings.

The judgment appealed from is affirmed.

All the Judges concur.