GARBER, Respondent v. HASKINS et al., Appellants

(172 N.W.2d 721)

(File No. 10623.  Opinion filed December 11, 1969)

**Stephens, Riter, Mayer & Hofer,** Pierre, for defendants-appellants.

**Martens, Goldsmith, May, Porter & Adam,** Pierre, for plaintiff-respondent.

RENTTO, Judge.

This is an action for revision of a contract for deed and its strict foreclosure. The court revised the contract as requested by plaintiff and ordered its foreclosure. Defendants appeal.

The realty involved is a 3,000 acre Sully County ranch. It was owned by plaintiff's intestate when the contract was entered into. The defendants are two Haskins brothers and their wives. They were residents of Oklahoma where Leon engaged in farming and Ben in the highway construction business. Leon Haskins, the younger of the brothers, had lived in South Dakota for several years farming land that adjoined the ranch here involved and doing custom combining. He was the only defendant taking an active part in this transaction, but the others concede that he was also acting for them.

In November 1965 Elmer Garber listed his ranch for sale with a real estate agent in Sully County. Shortly thereafter the agent contacted Leon Haskins in Oklahoma and advised him of the listing. He promptly came to South Dakota and with the agent went to see the owner and the land. In their conversations leading up to the written contract it was agreed by all that the ranch consisted of 3,040 acres; that it was to be sold for $90.00 an acre, making a total price of $273,600.00; that the down payment would be 29% of this or $79,344.00 to be paid when the contract was executed; that the balance of $194,256.00 and interest thereon would be amortized and paid in 15 equal annual installments with the first annual payment on January 2, 1968; that the unpaid balance would bear interest at the rate of 5 1/2% per annum from March 1, 1966; that the first payment of interest would be paid on January 2, 1967 and thereafter when the annual payments on the principal were due.

After these preliminary negotiations the seller, buyer and agent met with Garber's lawyer for additional discussion which resulted in only minor changes in their agreement. The buyer and seller apparently had another meeting with this lawyer after which an amortization schedule of payments applicable to the terms agreed on was ordered through a local bank from a Wisconsin firm which specialized in furnishing such service.

Upon receipt of this a written contract was prepared specifying the annual payments to be in the amount shown on the amortization schedule which was $13,430.32. A copy of the schedule was attached to and made a part of the contract.

Haskins took the contract to his local lawyer who suggested changes which were made. It was taken by him to Oklahoma where it was retyped to include the wives of the defendants as purchasers and signed by the defendants. After this it was brought back to South Dakota and signed by the seller on February 28, 1966. A few days after he executed it $79,334.00 was paid to him as the down payment by the defendants. A deed conveying the premises to the purchasers and abstracts of title, together with an executed copy of the contract, were deposited in escrow in the Dakota State Bank at Blunt, South Dakota. Defendants took possession of the premises and commenced farming it more intensively and extensively than it had been cropped by the seller. Apparently they are still in possession of the ranch.

In August 1966 it was learned that the annual payments specified in the original amortization schedule—and incorporated therefrom in the contract for deed—were incorrect in amount. A new and corrected schedule was secured. Under it the annual payments were $19,353.27. The purchasers and the escrow holder were notified of this mistake and furnished a copy of the new schedule. On December 30, 1966, the purchasers paid to the escrow holder $8,903.39, being the interest due on the unpaid portion of principal from March 1, 1966 at 5 1/2% per annum. On January 2, 1968 they tendered to the escrow holder $13,430.32 as the annual payment due under the contract. On instructions from plaintiff it was declined. The purchasers deposited that amount to the credit of plaintiff in the First National Bank of Pierre, South Dakota, and notified him thereof. It was never taken or accepted by plaintiff and remains as deposited by defendants.

Plaintiff then instituted this action claiming that the incorrect schedule of amortization payments included in the con-

tract resulted from a mutual mistake of the parties and asked that the contract be revised by incorporating therein the correct schedule of payments so as to express the true intent of the parties. His complaint also alleged that the purchasers have not made the payments required of them by the contract and because of such default requested that they be foreclosed of all rights thereunder. Defendants by their answer asserted that the schedule of payments included in the contract represented the true intent and agreement of the parties. They alleged that they had complied with all its terms and expressed their willingness and ability to make the payments required thereby. They asked only that plaintiff's complaint be dismissed.

The court found that the parties intended that the deferred principal balance of $194,256.00 be paid off in 15 equal annual payments covering both principal and interest and that as to the amount of these annual payments the intention of the parties is expressed by the second amortization schedule and not the first. It further found that the schedule of payments specified in the contract resulted from a mutual mistake of the parties. The judgment entered revised the contract accordingly and determined that the defendants were in default thereunder. It allowed them ten days in which to make the $19,353.27 annual payment due on January 2, 1968, together with interest thereon at 6% from that date to the date of payment. In default of such, plaintiff was entitled to foreclose the contract. In the event of such foreclosure the $13,430.32 deposited by them to the credit of the plaintiff would be returned to defendants.

With us the revision of contracts is provided for by statute. SDCL 1967 21-11-1 states:

"When through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without

> prejudice to rights acquired by third persons, in good faith and for value."

We have said that reformation is "that remedy in equity by means of which a written instrument is made or construed so as to express or conform to the real intention of the parties when some error or mistake has been committed." Craig v. National Farmers Union Automobile & Cas. Co., 76 S.D. 349, 78 N.W.2d 464. That this is its purpose is made clear in SDCL 1967 21-11-3, which provides:

> "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be."

That the problem presented resulted from a mistake is not seriously questioned.

■■ In granting reformation of a contract on the ground of mistake the court does not make a contract for the parties. Rather it revises the writing to express their agreement. Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250; Essington v. Buchele, 79 S.D. 544, 115 N.W.2d 129. Consequently it is necessary that the parties have arrived at a complete mutual understanding of all essential terms of their bargain. Restatement of the Law, Contracts, § 504. The court found that the parties had agreed to a sale and purchase of this acreage in all respects as set out in the written contract except as to the dollar amount of the amortized annual payments. The determination of these amounts was only a matter of arithmetic computation from the essential terms of the bargain on which they had agreed.

■ Defendants do not seem to urge that this finding is without evidentiary support. They contend, however, that they would not have agreed to buy the premises if they had known the correct amount of the required annual payments. They proposed a finding to this effect which the court did not adopt.

Moreover, there is evidence in the record that after the seller, purchaser and real estate agent first visited the seller's lawyer they called on a certified public accountant and inquired of him as to the amounts of the annual amortized payments. By a shortcut method he roughly calculated that they would be about $18,500.00 annually. Apparently, the court accepted this evidence because it found that the defendant knew or suspected the incorrectness of the schedule of annual payments specified in the contract. On this record revision of the contract was warranted. If payments were continued under it as written, which seems to be the position of the defendants, such performance would be insufficient to accomplish the particular object that they had agreed on.

Defendants strenuously urge that our decision in Teutsch v. Hvistendahl, 72 S.D. 48, 29 N.W.2d 389, adhered to on rehearing in 72 S.D. 195, 31 N.W.2d 566, requires a reversal of the judgment herein. We do not so regard that holding. There the parties never agreed on the essential terms of their bargain because they were mistaken as to the identity of the ground on which the house being conveyed was located. When the mistake is as to the identity of the property rather than its description, reformation does not lie. 45 Am.Jur., Reformation of Instruments, § 38; 76 C.J.S. Reformation of Instruments § 25b. The mistake here was not of that nature. It was in the drafting of the instrument rather than in the making of the contract.

The strict foreclosure portion of the judgment required defendants to pay interest at 6% on the $19,353.27 which it determined they were obligated to pay on January 2, 1968. They assert that they should not be required to pay interest on that amount, but only on the difference between it and the $13,430.32 which they had deposited to the credit of the plaintiff. The trial court overruled this contention. In the circumstances of this deposit its action in this regard was proper.

Affirmed.

All the Judges concur.