BROOKS, INC., Appellant v. BROOKS et al., Respondents

(201 N. W. 2d 128)

(File No. 10875. Opinion filed October 3, 1972)

**Boyce, Murphy, McDowell, & Greenfield,** Sioux Falls, for plaintiff and appellant.

**Willy, Pruitt & Matthews,** Sioux Falls, for defendants and respondents.

WOLLMAN, Judge.

This is an appeal from a judgment of the circuit court of Minnehaha County dismissing plaintiff's action to reform a deed and to enforce an agreement for the sale of certain real property.

Sometime during the 1920's, Daniel F. Brooks and David A. Brooks, brothers, began to operate a farm machinery business as equal partners in Sioux Falls, South Dakota. In 1940, the two brothers purchased from the Connecticut General Life Insurance Company 160 acres of real property in Minnehaha County, South Dakota. Title to the property was conveyed by special warranty deed to "Daniel F. Brooks and David A. Brooks, as joint tenants with right of survivorship." Thereafter during the 1940's the two brothers purchased as tenants in common approximately 240 additional acres of real estate in Minnehaha County, nearly all of

which was contiguous to the property here in dispute, together with certain real property in Potter County, South Dakota, and in Wibaux County, Montana.

The farm machinery business was discontinued by the brothers in 1952, but they retained all of their real estate holdings for the remainder of their lives. They managed equally and divided equally the profits from their machinery business and land holdings during their lifetimes, including the land in question.

David A. Brooks died on February 9, 1963 at the age of 82. A Sioux Falls bank acted as the executor of his estate and as the trustee of two trusts created by his last will and testament. Included in the probate of David's estate was a one-half interest in all of the real estate acquired by the brothers during their lives, including the 160 acres in question. This one-half interest in the realty was distributed to the two trusts, one of which was established for the benefit of David's widow, Mary Brooks, and the other for the benefit of David's four surviving children.

After the death of Mary Brooks in 1967, the four children succeeded to all of the one-half interest in the real estate which had been included in David's estate. The four children formed a corporation, Brooks, Inc., plaintiff and appellant herein, to hold their interest in the real estate.

Daniel F. Brooks died on June 17, 1969 at the age of 91. During the six-year period from David's death in 1963 until his own death in 1969, Daniel F. Brooks maintained and acknowledged that all of the real estate in which he and his brother had an interest was owned one-half by himself and one-half by the estate of his deceased brother David. Daniel at no time claimed sole ownership of the disputed property as a surviving joint tenant. He attempted on several occasions to sell his one-half interest in all of the South Dakota real estate, including the disputed property, to David's beneficiaries, the holders of the other one-half interest.

After Daniel's death in 1969, his widow, Elma I. Brooks, signed, as the successor in interest to Daniel F. Brooks in the real es-

tate holdings, a "Real Estate Buy and Sell Agreement" agreeing to sell her interest therein to plaintiff. It was in conjunction with this transaction that it was first discovered by the parties that legal title to the 160 acres here in question had been conveyed to Daniel F. Brooks and David A. Brooks as joint tenants and not as tenants in common. As a result, Elma I. Brooks refused to convey her interest in the real estate and this lawsuit followed.

 There is a presumption that a written instrument was carefully prepared and executed, that the parties knew and understood its contents, that it is clear, that it truly embodies and expresses the intention of the parties, and that it speaks the final and entire agreement or contract of the parties. 76 C.J.S. Reformation of Instruments § 82(a), p. 447; 45 Am.Jur., Reformation of Instruments, § 112, p. 649. The fact that a deed was taken in joint tenancy establishes a presumption that the property was in fact held in joint tenancy. King v. King, 107 Cal.App.2d 257, 236 P.2d 912. A party seeking reformation of a written instrument must prove his case by clear, unequivocal and convincing evidence. Craig v. National Farmers Union Automobile and Casualty Co., 76 S.D. 349, 78 N.W.2d 464; Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250; Bedford v. Catholic Order of Foresters, 73 S.D. 511, 44 N.W.2d 781; 76 C.J.S. Reformation of Instruments § 82(b) p. 449.

SDCL 21-11-1 provides that:

"When through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

SDCL 21-11-3 provides that:

"In revising a written instrument, the court may inquire what the instrument was intended to mean, and

what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be."

We believe that all of the facts and circumstances relating to the manner in which the Brooks brothers were conducting their business at the time the land in question was acquired, their subsequent business dealings with each other with reference to the land, and the conduct of Daniel F. Brooks with respect to the land after the death of David A. Brooks, lead to the conclusion that the brothers intended that they hold title to the land in question as tenants in common and not as joint tenants. Thus we think that reformation is a proper remedy in this case to conform the deed to reflect the true intention of the parties. Essington v. Buchele, 79 S.D. 544, 115 N.W.2d 129; Garber v. Haskins, 84 S.D. 459, 172 N.W.2d 721; Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250.

Some of these facts and circumstances have already been set forth. Specifically, the evidence showed that the partnership between the brothers during the early years consisted solely of the farm machinery business, the profits from which were divided equally between the brothers. This partnership activity was later expanded to encompass the ownership and management of real property with the acquisition of the land in question and with the later purchase of additional real estate in South Dakota and in Montana. After the farm implement business was discontinued in 1952, the partnership continued to retain its real estate holdings, including the land in question. From their first association in business together in the 1920's until the death of David A. Brooks in 1963, all business interests involving Daniel and David were conducted through their partnership and they were equal partners in every business undertaking. The cash down payment for the land in question was made by check from the farm machinery partnership account. There was testimony which the court ordered stricken as being not responsive but which we think the court should have considered, to the effect that all subsequent payments for the land in question were made from the same partnership account. SDCL 48-4-2 provides that, "Unless the contrary intention appears, property acquired with partnership funds is partnership

property." We think that it is clear from evidence that the Brooks brothers intended to acquire and hold the land in question as partnership property and that their object was to own, manage and profit from it as such. This being the case, we conclude that the brothers in fact held title to the land in question as tenants in common and not as joint tenants. Williams v. Dovell, 202 Md. 351, 96 A.2d 484; Vlamis v. De Weese, 216 Md. 384, 140 A.2d 665. Thus we believe the deed must be reformed to concur with the common intent of the Brooks brothers and the object that they sought to accomplish. Franz v. Franz, 308 Mass. 262, 32 N.E.2d 205; Scott v. Grow, 301 Mich. 226, 3 N.W.2d 254.

Turning to the conduct of Daniel F. Brooks after the death of his brother in 1963, we find that on a number of occasions he told the children of David A. Brooks that they owned one-half of the property in question. During the summer of 1963 Daniel requested that Frank and John Brooks, who were sons of David A. Brooks, purchase Daniel's half of the real estate holdings. In December of 1966 Daniel F. Brooks renewed his request to John Brooks that John and the other children of David A. Brooks buy his one-half interest in the farm property. Daniel's offer to sell his one-half interest in the real estate holdings was renewed to Frank Brooks in the spring of 1968 and again in the fall of 1968. This was during the time that Frank Brooks was managing the farm property and was making equal disbursements from the farm account to Daniel. F. Brooks and to the trust created for the benefit of Mary Brooks.

After David A. Brooks' death, the certified public accountant who had prepared Daniel F. Brooks' tax returns from 1942 until the time of his death and who was later named as coexecutor of his estate included one-half of the income from the farm property in Daniel's tax returns, apparently on instructions from Daniel.

Soon after David A. Brooks' death Daniel went to the Sioux Falls bank that was acting as executor of David's estate and told the trust officer that, "* * * now, there will be no trouble whatever. Each of us own one-half interest in all of the Minnehaha County property * * *". At no time after David's death did Daniel make any claim to the trust officer that he was the owner

of all of the property in question. To the contrary, he helped furnish the executor with the information necessary to file the inventory and the inheritance tax report in connection with David's estate, both of which instruments listed David's estate as having a one-half interest in the property in question. The attorney for the executor of David's estate told Daniel that he needed to examine the abstracts to the property in question and said that he understood that both Daniel and David had a one-half interest in the property. Daniel confirmed to the attorney that he and his brother David both had one-half interest in the property and said that, "* * * if that is all you need them (the abstracts) for, you don't need them." The attorney then asked Daniel whether there was a joint tenancy or tenancy in common, to which Daniel replied that each owned one-half and that David's estate would now own one-half of the property with the exception of the Potter County land to which each owned three-eights interest.*

We are satisfied that the evidence is sufficient to establish that Daniel F. Brooks and David A. Brooks intended to acquire the property in question as a partnership asset, that they intended to hold it as tenants in common and that they did in fact hold the property as tenants in common notwithstanding the language of the deed. Our holding makes it unnecessary to consider appellant's contention that the use of the land as a partnership asset by the Brooks brothers was inconsistent with their ownership of the property as joint tenants and that such use severed the joint tenancy.

We conclude, therefore, that the trial court erred in not reforming the deed in question so as to create a tenancy in common to the 160 acres of land and in not entering a decree of specific performance with respect to the real estate buy and sell agreement. Accordingly, the judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

---

* Respondents claim that at the time of these conversations with the members of David's family, the trust officer and the attorney for the executor, Daniel F. Brooks was some 85 years of age, hard of hearing and somewhat eccentric. Although the record does support a finding that Daniel was hard of hearing, there is ample testimony that he was in full possession of his mental faculties and that he understood the nature of his property interests. We think this is confirmed by the fact that he correctly told the attorney for the executor of David's estate that he and David each owned a three-eighths interest in the Potter County, South Dakota land.

HANSON, P. J., and WINANS and DOYLE, JJ., concur.

BIEGELMEIER, J., dissents.

BIEGELMEIER, Judge (dissenting).

The majority opinion correctly states the law that a written instrument, here a deed, "speaks the final and entire agreement or contract of the parties" and a "party seeking reformation of a written instrument must prove his case by clear, unequivocal and convincing evidence."

Under our settled and familiar law when the evidence supports the findings, as it does here, and the findings support the conclusions of law and judgment, the judgment must be affirmed.* Because the Court reverses under these circumstances, I part company with the opinion. Applying the familiar rules that findings shall be viewed in the light of evidence to support them and also that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses," RCP 52(a), SDCL 15-6-52(a), the judgment should be affirmed.

It does not behoove a dissenting judge to set forth the evidence that supports the trial court's decision, yet no support exists for the Court's reference to evidence of the equal division of profits from the 160 acres during the lifetimes of the brothers. Of course they so divided the profits; that was in strict accord with the joint-tenancy deed as it read, not in opposition to it. However that may be, it was for the trial judge to weigh the evidence and for him to give the evidence the value and weight he deemed it merited; that was for him as the fact finder, not for us as a reviewing court. He was justified in concluding some of the evidence of the acts of others than the brothers, i. e., the personal representatives of the deceased brother, his heirs, tax accountants, or Daniel, the survivor when he was from 85 to 90 years old, was

---

\* See, among others, Miller v. Hanson, 68 S.D. 476, 4 N.W.2d 602; Murray v. Jibben, 81 S.D. 359, 135 N.W.2d 227; Rumbolz v. Wipf, 82 S.D. 327, 145 N.W.2d 520; Midwest Oil Co. v. City of Aberdeen, 69 S.D. 343, 10 N.W.2d 701; Cowan v. Dean, 81 S.D. 486, 137 N.W.2d 337.

not clear, unequivocal or convincing enough to overcome the plain wording of the written deed. I therefore cannot agree with what I believe is an intrusion of RCP 52(a) nor with the Court's action which removes the stability of long recorded deeds.

I would affirm.