**Marjorie G. RYKEN and the JoDean Corporation, Plaintiffs and Appellants,**

v.

**Rodney BLUMER, Defendant and Appellee.**

**No. 13196.**

Supreme Court of South Dakota.

Argued March 19, 1981.

Decided July 8, 1981.

Rehearing Denied Aug. 11, 1981.

John R. Steele of Steele & Gerdes, P. C., Plankinton, for plaintiffs and appellants.

Jeff Masten of Masten, Myrabo & Irons, P. C., Canton, for defendant and appellee.

HENDERSON, Justice.

## ACTION

Marjorie G. Ryken and JoDean Corporation (appellants) appeal from a judgment based upon a jury verdict denying their cause of action sounding in conversion. The jury held against Rodney Blumer (appellee) on his counterclaim for rent from which no appeal was taken. Appellants' complaint alleged, and their entire case hinges upon, an oral modification of a written contract for deed and a supposed resultant conversion of personalty within a building upon the subject lot sold. A Turner County jury was submitted the issue of whether there existed an oral modification and the jury held in the negative. Four separate issues are raised by appellants. We affirm in all respects.

## FACTS

The contract for deed was executed on October 28, 1978. Appellant Marjorie Ryken was seller and appellee was buyer. Appellant JoDean, which sold fencing supplies, had been keeping materials and supplies in the building located on the lot. Mark Ryken, appellant Marjorie Ryken's husband, approved of this arrangement and, in exchange for the storage space, appellant JoDean (through its president John Nielsen) was considering making Mark Ryken a partner. Additionally, Mark Ryken financially contributed to the purchase of some of the fencing supplies that were kept in the building.

During the autumn of 1978, negotiations for sale of the lot took place. These negotiations were primarily between Mark Ryken and appellee and were consummated by signatures on October 28, 1978; the contract was prepared by Mark Ryken's attorney. It appears that appellant Marjorie Ryken had little involvement with the contract's development. The contract contained the following provision:

> On or before February 1, 1979, Seller [appellant Marjorie Ryken] will have the right to remove any and all personal property located on or within said premises and any items of personal property remaining[.]

The contract also provided that, subsequent to February 1, 1979, appellee would have the right to take possession of any and all personalty located on the premises. (Originally, the deadline for the removal of the personalty was November 1, 1978, but this was changed to February 1, 1979, at the parties' mutual consent.) Nielsen was informed by the Rykens of the existence of the contract on approximately November 1, 1978. He testified that he was not, however, informed at this time that he was required to remove appellant JoDean's personalty from the premises by February 1, 1979.

Appellants did not remove their respective personalty by the February 1, 1979, deadline. Deeming this a forfeiture, appellee on March 23, 1979, began selling various items of appellants' personalty and took possession of the remainder. Appellants contend, however, that the following factors negated the February 1, 1979, deadline: (1) Prior to the execution of the contract, appellee told Mark Ryken (according to Mark Ryken's testimony) that he (appellee) would remove the personalty involved from the premises; (2) during a conversation between appellee and Boyd Peterson (who worked for Mark Ryken and had a key to the building where the disputed personalty was stored) that took place in late 1978,* appellee stated that there was no hurry to remove the personalty; (3) appellee never orally requested appellants to remove their personalty; and (4) appellant Marjorie Ryken was assured by her husband and Peterson that there was "no problem" with the February 1, 1979, deadline. Nielsen testified that the Rykens had informed him that the personalty of appellant JoDean was unimportant and "not in the way." Nielsen further testified that he first learned of appellee removing appellant JoDean's personalty in March of 1979. Appellants' version of these facts obviously did not convince the jury.

## ISSUES

### I.

Was there a contract implied in fact between the contracting parties which modified the existing written contract by extending the February 1, 1979, deadline? We hold that there was not.

### II.

Was there a contract implied in law between the contracting parties which would have prevented appellee from taking possession of appellants' personalty under the theory of unjust enrichment? We hold that there was not.

---

\* Peterson testified that the conversation took place in late December 1978 or early January 1979, but that he was not sure. Appellee, how-

### III.

Did the trial court err in not instructing the jury on the theory of tortious conversion? We hold that it did not.

### IV.

Did the trial court err by refusing to give the jury a cautionary instruction with regard to one of the parties being a corporation? We hold that it did not.

## DECISION

### I.

Appellants contend that the trial court should have ruled as a matter of law that the written contract had been reformed due to the alleged existence of a contract implied in fact. This implied contract in fact is allegedly based upon an oral modification by appellee which was relied upon by appellant Marjorie Ryken.

This Court stated in *Mahan v. Mahan*, 80 S.D. 211, 215, 121 N.W.2d 367, 369 (1963):

A contract is implied in fact where the intention as to it is not manifested by direct or explicit words by the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or acts done by them, or other pertinent circumstances attending the transaction.

The pertinent inquiry, then, is whether the conduct of appellee modified the written contract. The jury obviously found that it did not; on appeal, all evidence and reasonable inferences therefrom will be viewed in a light most favorable to uphold the jury's verdict. *Chisum v. Behrens*, 283 N.W.2d 235 (S.D.1979); *Lukens v. Zavadil*, 281 N.W.2d 78 (S.D.1979).

The party seeking reformation of a written contract must prove his case by clear, unequivocal and convincing evidence. *Northwestern National Bank of Sioux Falls v. Brandon*, 88 S.D. 453, 221 N.W.2d 12 (1974). Reformation of a contract is al-

ever, maintained that the conversation took place in late November or early December of 1978.

lowed only when the contract does not express the intention of both parties. *Clark v. Bergen*, 75 S.D. 48, 59 N.W.2d 250 (1953).

With regard to appellants' assertion that prior to the execution of the contract appellee stated he would remove the personalty of appellants located on the lot, SDCL 53–8–5 provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

■ Upon review of the remaining evidence in a light most favorable to appellee, *Chisum*, supra, *Lukens*, supra, we believe that the conduct and oral assertions by appellee were sufficiently removed in time and/or definitiveness from constituting an intention on appellee's part to modify the February 1, 1979, deadline of the written contract. The evidence does not clearly and unequivocally support appellants' contention. *Northwestern National Bank*, supra. Accordingly, we hold that no contract implied in fact was entered into between the contracting parties.

## II.

Secondly, appellants maintain that the trial court erred by not intervening in equity and ruling that a contract implied in law existed, thus disallowing appellee any unjust enrichment realized by his possession and subsequent sale of appellants' personalty.

■ Contracts implied in law (quasi-contracts) are "fictions of the law adopted to achieve justice where no true contract exists." *Mahan v. Mahan*, supra, 80 S.D. at 214, 121 N.W.2d at 369. The theories of unjust enrichment and quasi-contract are not usually invoked when a contract has already been executed between the parties. To quote from *Thurston v. Cedric Sanders Company*, 80 S.D. 426, 429–430, 125 N.W.2d 496, 498–499 (1963) (citation omitted):

The courts recognize two classes of implied contracts. The one is implied in fact and the other implied in law. Those falling within the second classification generally referred to as quasi or construc-

tive contracts do not arise because of a manifestation of an intention to create them, but rest upon the equitable principle that a person shall not be permitted to enrich himself unjustly at the expense of another. . . . In *Werre v. Northwest Thresher Co.*, [27 S.D. 486, 131 N.W. 721 (1911)], wherein plaintiff sought to recover from defendant upon an implied obligation to pay for benefits received this court said:

"There is no question but what, where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or suit on quantum meruit. *Ball v. Dolan*, 21 S.D. 619, 114 N.W. 998, 15 L.R.A. (N.S.) 272." The same principle is stated in 98 C.J.S. Work & Labor § 27 as follows: "The rights of the parties are controlled by the contract, and under such circumstances recovery cannot be had on the theory of a quantum meruit". See also *Schneider v. Allis-Chalmers Mfg. Co.*, 196 Wis. 56, 219 N.W. 370; *Chandler v. Washington Toll Bridge Authority*, 17 Wash.2d 591, 137 P.2d 97; *Federal Royalty Co. v. Knox*, 5 Cir., 114 F.2d 78.

■ In the instant case, a contract was already in existence between the parties. There is a presumption that the parties to a contract know and understand its contents, and that the contract embodies and expresses the true intention of the parties. *Brooks, Inc. v. Brooks*, 86 S.D. 676, 201 N.W.2d 128 (1972); 76 C.J.S. *Reformation of Instruments*, § 82 (1952); 45 Am.Jur. *Reformation of Instruments*, § 112 (1943). We hold that the trial court did not err by failing to rule that a contract implied in law existed between the parties.

## III.

■ Appellants contend that the trial court erred by not instructing the jury on the theory of tortious conversion. A trial court is to present only those issues to the jury by way of instruction which find support by competent evidence in the record. *Wolf v. Graber*, 303 N.W.2d 364 (S.D.1981);

*Olesen v. Snyder*, 277 N.W.2d 729 (S.D. 1979). Generally, a trial court's refusal to give a requested instruction setting forth the applicable law constitutes prejudicial error. *Wolf v. Graber*, supra. The burden is on appellant, however, "to show not only error but also prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if [the proposed] instructions had been given." *Lytle v. Morgan*, 270 N.W.2d 359, 362 (S.D.1978). This Court must consider the jury instructions as a whole to determine if prejudicial error exists. *Lytle v. Morgan*, supra; *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977).

Here, we do not believe the jury's verdict would have differed had appellants' proposed instruction been given. "In order to constitute a conversion of chattels there must be some repudiation of the owner's right or some exercise of dominion over them inconsistent with such right[.]" *Rapid Sewing Center, Inc. v. Sanders*, 79 S.D. 373, 377, 112 N.W.2d 233, 236 (1961). Appellants admit that appellee originally had lawful possession of the personalty in question. Appellee's taking possession of the personalty was pursuant to the contract provisions.

▮ Under the situation presented here, the prerequisite to appellee being held liable on a theory of tortious conversion would be a finding that the contract was, in fact, orally modified. Under the express terms of the contract, if no extension of the February 1, 1979, deadline was found to exist, all personalty located on the lot would become the lawful property of appellee; hence, appellants' tortious conversion theory of recovery rises and falls on whether or not the written contract was modified. If there was no oral modification of the contract, appellants have no basis for recovery under either theory. The jury was adequately instructed on the previously discussed theories of implied contract. We hold that appellants were not prejudiced by the trial court's failure to instruct the jury on the theory of tortious conversion.

## IV.

▮ Finally, appellants maintain they had a right to a cautionary instruction and the trial court erred by refusing to give this instruction to the jury:

The fact that one of the parties to this action is a corporation is immaterial. In the eyes of the law, the corporation is an individual party to the lawsuit and all parties are entitled to the same impartial treatment.

The instruction is taken from S.D. Pattern Jury Instruction, Vol. I, 1.01–(6).

In 19 C.J.S. *Corporations*, § 1340 (1940) (emphasis supplied), it is stated:

Where a corporation is a party, it is proper to instruct the jury that the case should be considered the same as a case between private citizens, but a corporate party is not, *as a matter of right*, entitled to such an instruction, and where the evidence reveals no necessity therefor, such an instruction is properly refused.

*See J. I. Case Threshing Mach. Co. v. Dezzutti*, 87 Colo. 479, 288 P. 1050 (1930). Also, it is stated in 88 C.J.S. *Trial*, § 320 (1955):

The giving or refusal of cautionary instructions rests largely in the discretion of the trial court; therefore the refusing of them is not error, especially where there is nothing in the evidence to indicate that they are needed, or where the jury are fairly instructed on the law of the case, and the refusal of the instruction does not prejudice the party requesting it.

Under the circumstances of this case, we see no necessity for the instruction and do not view the trial court's action as being an abuse of discretion. If the jury was, in fact, prejudiced against appellant JoDean because of its corporate status, its verdict would have been only against appellant JoDean and not against appellants JoDean *and* Marjorie Ryken. Verdict forms were made available to the jury to allow it to return a verdict against the severable appellants. The jury's verdict, however, was against *both* appellants. We therefore cannot plausibly assert that the trial court committed prejudicial error by its refusal to

give the proposed instruction. *Lytle v. Morgan*, supra.

The judgment of the trial court is affirmed.

All the Justices concur.