ENCHANTED WORLD DOLL
MUSEUM, Plaintiff and
Appellant,

v.

M. Maxine BUSKOHL and Connie M.
Buskohl Barney, Defendants
and Appellees.

No. 15206.

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1986.

Decided Dec. 23, 1986.

J.G. Shultz and Richard J. Corcoran of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and appellant.

Rory M. Barth, Sioux Falls, and David Updegraff, Sioux City, for defendants and appellees.

WUEST, Chief Justice.

This is an appeal from the decision of the trial court which denied the appellant a declaration of rights or, alternatively, reformation of a contract for deed, and denied appellant's motion for a new trial. We affirm.

On September 22, 1981, the parties entered into a contract for deed for the sale of certain designated real property from the sellers, Enchanted World Doll Museum (Enchanted World), a South Dakota corporation, to the buyers, Maxine Buskohl and Connie Buskohl Barney. The contract called for a purchase price of $200,000, with $25,000 as a down payment and the balance amortized over twenty years. The contract provided for an interest rate of six percent on outstanding principal but also included an adjustment of principal provision designed to increase the adjusted balance by a percentage of any decrease in the value of the dollar due to inflation. The provision, which increased the adjusted balance by a percentage of any yearly change in the Consumer Price Index, read in pertinent part as follows:

(4) the parties agree and understand that the seller desires protection against decreases in the value of the dollar due to inflation, and that the buyers desire protection against increases in the value of the dollar due to depression or deflation. Therefore, the provisions in this paragraph have been inserted for the purpose of affording such *protection to all parties to this contract to the extent of 70% of such change.*

... The mechanics of the adjustment shall be as follows:

A determination shall be made of the index figure of each November 1 during the period the contract is in effect. The final figure will be the most recent available at the date of the computation. The percentage increase or decrease will be determined for each one-year period. Each percentage increase or decrease will be *reduced by 70% and applied to the adjusted principal* balance in effect at the beginning of each year. The amount of payments applied to principal will be computed for each one-year period based on the principal balance adjusted in this manner. Final payment will be increased or decreased by the amount which the resulting adjusted principal amount exceeds or is less than the amount actually paid.

Attached is a hypothetical computation shown for illustrative purposes involving a contract running for 16 years and providing interest at a rate of 4% per annum and a cost of living adjustment of 50%. (Emphasis added).

The provision was designed to render the seller an income tax advantage. Principal income from the sale would first be considered a nontaxable return of capital and then any principal income above the sellers basis would be capital gain. At the time, interest rates were about fourteen percent, and since interest income is considered ordinary income and taxed at higher rates, sellers set the interest rate at six percent but included this provision in order to increase the effective interest rate without unwanted tax effects. Sheldon F. Reese (Reese), then president of Enchanted World, had his secretary, Margaret Barron (Barron), draft the adjustment provision in the contract for deed by using as reference a copy of a contract used by Reese in 1970 which he called the Star Village contract.

The present controversy stems from the parties having different interpretations of paragraph 4. Appellant-seller claims the language in paragraph 4 should be interpreted so seller would receive 70% of the inflation rate by having a corresponding increase in the adjusted principal. So, if

the consumer price index rose by roughly five percentage points, the intended result under the adjustment provision was to have a 3.5% increase in the outstanding principal. For example, if under the contract there remained a $170,000 adjusted principal balance at the end of the year, it would be increased by roughly $6,000.

The Appellee-buyers claim they would be protected from 70% of any inflationary change and thus would only have the outstanding principal increased by 30%. The buyers interpretation is confirmed by the mechanics provision in the second paragraph of paragraph 4.

Appellant first urged the trial court to hold paragraph 4 was ambiguous in order to have the court declare the rights of the party. This would then permit extrinsic evidence to determine the intent of the parties and thus, create a question of fact which would be the basis for declaring the rights of the parties under the contract. The trial court allowed extrinsic evidence provisionally to determine the issue of ambiguity, but the court went on to find that, while by itself the first part of paragraph 4 could reasonably be interpreted differently by the parties, the mechanics provision settled the potential ambiguity.

█ Whether the language of a contract is ambiguous is ordinarily a question of law. *Jensen v. Pure Plant Food International, Ltd.*, 274 N.W.2d 261, 264 (S.D. 1979). The language in a contract may be said to be ambiguous when "it is reasonably capable of being understood in more than one sense." *Ponderosa-Nevada, Inc. v. Venners*, 90 S.D. 579, 243 N.W.2d 801 (1976); *Jones v. American Oil Co.*, 87 S.D. 384, 387, 209 N.W.2d 1, 3 (1973).

█ The first part of paragraph 4 is seemingly ambiguous. Each party claims to have interpreted it differently. However, any ambiguity is removed when the mechanics provision in the second part of paragraph 4 explains how the 70% adjustment works. "A contract should be considered as a whole and all of its parts and provisions will be examined to determine

the meaning of any part." *Jones* 209 N.W.2d at 3. "It is a fundamental rule of contract construction that the entire contract, and each and all of its parts and provisions must be given meaning if that can be consistently and reasonably done." *Dail v. Vodicka,* 89 S.D. 600, 237 N.W.2d 7, 9 (1975). The rules of construction further provide that if a conflict exists between a specific provision and the general provision in a contract, then the specific provision is to govern. *See Oaks Farming Association v. Martinson Bros.,* 318 N.W.2d 897, 908 (N.D.1982); *Burgi v. Eckes,* 354 N.W.2d 514, 519 (Minn.App. 1984); *Small v. Ogden,* 259 Iowa 1126, 147 N.W.2d 18, 21 (1966); *Goldmann Trust v. Goldmann,* 26 Wisc.2d 141, 131 N.W.2d 902, 906 (1965). Under these rules of construction the second provision of paragraph 4 is the controlling provision and the trial court ruled correctly.

■ Further, appellant drafted this contract and one who speaks or writes a contract can by exactness of expression more easily prevent mistakes in meaning than one with whom he is dealing, therefore any doubts arising from ambiguity of language are resolved in favor of the latter. Williston on Contracts, § 621 (1961); *see Hicks v. Brookings Mall, Inc.,* 353 N.W.2d 54, 56 (S.D.1984); *Forester v. Weber,* 298 N.W.2d 96, 97 (S.D.1980); *City of Sioux Falls v. Henry Carlson Co.,* 258 N.W.2d 676, 679 (S.D.1977); *Jones, supra.*

In the alternative, appellant claims it was a mistake for the mechanics provision to read "reduced by 70%," and instead it should have read "multiplied by 70%." SDCL 21-11-1 provides:

> When through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

■ "Reformation" is that remedy in equity by means of which a written instrument is made or construed to express or conform to the real intention of the parties, when some error or mistake has been committed. *Craig v. National Farmers Union Automobile & Cas. Co.,* 76 S.D. 349, 78 N.W.2d 464 (1956). The remedy of reformation is given when the minds of the parties have met on the terms of the contract they intended but the writing fails to express that intention. By granting reformation, the court merely revises the writing to express the mutual intention of the parties. *Burke v. Bubbers,* 342 N.W.2d 18 (S.D.1984); *Garber v. Haskins,* 84 S.D. 459, 172 N.W.2d 721 (1969); *Essington v. Buchele,* 79 S.D. 544, 115 N.W.2d 129 (1962). Reformation of a contract is allowed only when the contract does not express the intentions of the parties. *Ryken v. Blumer,* 307 N.W.2d 865 (S.D.1981); *Clark v. Bergen,* 75 S.D. 48, 59 N.W.2d 250 (1953).

■ "Mistake, accident, or oversight, which will justify reformation of written instruments must be mutual as to both contracting parties." *Hughes v. Payne,* 27 S.D. 214, 130 N.W. 81 (1911). When a court grants reformation on a contract on the grounds of mistake, the court does not make the contract for the parties. Instead, it revises the writing to express their agreement. It is therefore necessary that the parties have reached a mutual understanding as to the essential terms of their bargain. *Garber, supra.* "The party seeking reformation of a written contract must prove his case by clear and convincing evidence." *Ryken, supra,* at 867; *Northwestern Nat. Bank of Sioux Falls v. Brandon,* 88 S.D. 453, 221 N.W.2d 12 (1974); *Brooks, Inc. v. Brooks,* 86 S.D. 676, 201 N.W.2d 128 (1972); *Craig, supra; Clark, supra.* The presumption is that the writing accurately reflects the intent of the parties. *Ridenour v. Farm Bureau Ins. Co. of Nebraska,* 221 Neb. 353, 377 N.W.2d 101 (1985).

■ The facts in this case established Reese had his secretary prepare the entire contract, but told the buyers it had been prepared by a lawyer. He further for-

warded the contract and told the buyers they should have their lawyer explain the provisions of the contract to them. They chose to make their own interpretation of the contract and interpreted paragraph 4 as increasing the principal 30% of any inflation rather than 70%. It logically follows there was not any mutual mistake in drafting the contract. Both parties did not intend to increase the principal 70% as claimed by appellant. Therefore the court cannot reform the contract for mutual mistake.

Knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake. If one party, at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein but knows what that intention is, the latter can have the writing reformed so that it will express that intention. Restatement of Contracts § 505 (1932); SDCL 21-11-1. There is no evidence the appellees knew of any mistake made by the plaintiff which would allow reformation. He did not explain the contract to them, instead, he told them it had been drafted by a lawyer and they should get their own lawyer to explain the contract.

█ Appellant assigns error to the trial court's denial of a motion for a new trial. Appellant offered what he termed newly discovered evidence. Application for a new trial is governed by SDCL 15-6-59(a). Part (4) of that section provides for a new trial based upon "newly discovered evidence, material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial." Appellant's "newly discov-

ered evidence" consists of two letters from Kay Carlson, an employee of Enchanted World, that were dated April 23 and May 5, 1981 and which were offered to show that Buskohl may have been seriously considering a purchase of the property from the date she leased the property. Appellant claims this impacts on Buskohl's credibility because she testified she was never really interested in a purchase at that time. Appellant has now shown why these letters were not available at the time of trial, furthermore, they were not material to the issues on trial, but impeachment on a collateral matter.

A motion for a new trial is addressed to the sound discretion of the trial court and the court's decision in granting or refusing the same will not be disturbed upon appeal by the appellate court unless it appears affirmatively from the record that there has been an abuse of such discretion.

*Ponderosa-Nevada, supra, citing Byre v. Wieczorek,* 88 S.D. 185, 217 N.W.2d 151, 159 (1974). We have considered the record and the arguments made by the appellants and cannot find any such abuse.

All the Justices concur.

FOSHEIM, Retired Justice, participating.

MILLER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.