#24969-a-SLZ

**2009 SD 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

M. SCOTT SPRANG and
CHRISTINA R. SPRANG,                      Plaintiffs and Appellees,

v.

DOUG ALTMAN,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE SEAN M. O'BRIEN
Judge

* * * *

JODY ODEGAARD SMITH of
Morgan, Theeler, LLP
Brookings, South Dakota                   Attorneys for plaintiffs
                                          and appellees.


MIKE C. FINK
Bridgewater, South Dakota                 Attorney for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 27, 2009

OPINION FILED **06/24/09**

#24969

ZINTER, Justice

[¶1.] M. Scott Sprang and Christina R. Sprang purchased real property from Doug Altman. Under the conditions of sale, Altman retained a qualified right of repurchase. A few years after the sale, Sprangs commenced this action seeking a declaration that Altman's right of repurchase was personal to Altman and did not run with the land. Altman counterclaimed for reformation of the condition. The circuit court denied reformation and concluded that the condition was a personal contract that did not run with the land. Altman appeals both issues. We affirm.

*Facts and Procedural History*

[¶2.] In March 2004, Altman offered to sell, and Sprangs agreed to purchase 19.5 acres of land for a homesite. Shortly thereafter, Mr. Sprang contacted Jeff Larson of Quality Homes to purchase an off-site-constructed house and install it on the property. At Quality Homes' request, Custom Touch Homes constructed the house at its facility.[1]

[¶3.] In May 2004, Larson applied to the Davison County Zoning Administrator, Dan Sudrla, for a building permit. Sudrla informed Larson that Sudrla could not issue a building permit because the house was not being sited on a twenty-five acre lot. A Davison County zoning ordinance prohibited non-farm single lots containing less than twenty-five acres. *See infra* ¶11 & note 3. Larson subsequently informed Mr. Sprang that Sprangs needed twenty-five acres in order

---

1. Custom Touch Homes constructs homes in a controlled environment. Once the home is constructed, it is shipped to the customer's building site.

to obtain a building permit. Larson also informed Mr. Sprang that under the zoning ordinance, Sprangs could build if the 19.5 acres were subdivided. Sprangs were not interested in subdividing the property because they wanted to locate the house in the middle of the 19.5 acre parcel.

[¶4.] Prior to closing on the real property, Mr. Sprang informed Altman about the problem with the building permit. Altman orally agreed to sell an additional 5.5 acres. Mr. Sprang testified that when Altman offered to sell the additional 5.5 acres, Altman expressed concern over subdivision of the property, but he did not mention repurchasing the 5.5 acres if the Sprangs ever sold the entire twenty-five acres. Following the agreement to sell the additional 5.5 acres, Sudrla issued the building permit.

[¶5.] On July 29, 2004, Sprangs closed on the sale of the twenty-five acres. At the closing, Altman presented Sprangs with a document entitled, "Conditions for Sale of Land," which Altman had drafted. Paragraph 4 of the document contained a condition of repurchase providing:

> If the 25 acre minimum zoning would change in the future or if M. Scott or Christina R. Sprang would ever separate the 25 acres, Doug Altman would have first opportunity to repurchase the additional 5.5 acres that [Altman] agreed to sell M. Scott or Christina R. Sprang due to the tax savings.

Altman also executed a warranty deed conveying the twenty-five acres to the Sprangs. The warranty deed and the Conditions for Sale of Land were recorded with the Davison County register of deeds.

[¶6.] Sprangs moved into the home in June 2004, and lived on the property for four years. During that time, Sprangs allowed Altman to use the 5.5 acres for

pasture at no cost. It is undisputed that the Sprangs did not use the 19.5 acres for agricultural purposes.

[¶7.] In 2007, Sprangs decided to sell their home and the twenty-five acres. Following Sprangs' entry into a purchase agreement with a buyer, a title problem was discovered regarding the meaning of the condition allowing Altman to repurchase the 5.5 acres. As a result, Sprangs commenced this declaratory action asking the circuit court to determine that the repurchase condition was personal to Altman and did not run with the land. Altman counterclaimed, contending that the condition ran with the land. He also asked for reformation of the condition and the warranty deed to provide that, in addition to the provision allowing repurchase for certain zoning changes or subdividing, Altman could repurchase if Sprangs did not receive an agricultural property tax benefit from owning the additional 5.5 acres. Altman finally requested specific performance of the reformed repurchase condition.[2]

[¶8.] At trial Mr. Sprang testified that when the agreement for the sale of the 5.5 acres was negotiated, the parties never discussed that twenty-five acres was needed to obtain an agricultural property tax assessment to reduce Sprangs' property taxes. On the other hand, Altman testified that Mr. Sprang had agreed that if Sprangs no longer received the agricultural tax benefit, Altman would have a right of repurchase. After hearing this conflicting evidence, the circuit court resolved the dispute, finding that the condition was not intended to allow a

---

2.    Because we affirm the circuit court's denial of reformation, we do not reach Altman's counterclaim for specific performance of the reformed condition.

repurchase if the Sprangs no longer received an agricultural tax benefit from owning the twenty-five acre parcel. Instead, the court found: "It's pretty clear to the court that [the condition] was necessary that the [Sprangs] purchase the additional 5.5 acres just to meet the minimum zoning requirements in order to construct a house[.]" The circuit court concluded that the condition as written set forth the intent of the parties and, therefore, reformation was not warranted. The court finally concluded that the condition was a personal contract between Sprangs and Altman that did not run with the land.

*Reformation*

[¶9.] Reformation is a "remedy in equity by means of which a written instrument is made or construed to express or conform to the real intention of the parties, when some error or mistake has been committed." Enchanted World Doll Museum v. Buskohl, 398 NW2d 149, 152 (SD 1986). *See also* SDCL 21-11-1 (providing that "[w]hen through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised . . . so as to express that intention[.]"). We review a circuit court's grant or denial of reformation under the abuse of discretion standard. LPN Trust v. Farrar Outdoor Adver., Inc., 1996 SD 97, ¶13, 552 NW2d 796, 799.

[¶10.] Altman argues that the circuit court abused its discretion when it failed to reform the condition to specifically provide that Altman had a right of repurchase if the Sprangs no longer received a tax benefit from owning a twenty-five acre parcel. Altman claims that the condition he drafted mistakenly refers to

the "25 acre minimum zoning" and subdivision restrictions, when the parties' real intent was to allow a repurchase if there were a change in the tax assessment rules. (Appellant's Br. 19-20) However, Altman concedes that the condition is silent regarding his right of repurchase in the event the additional acres become unnecessary to provide an agricultural tax benefit to Sprangs. He admits that he "could have drafted the document using better language." (Appellant's Br. 30)

[¶11.] Sprangs respond that if they had wanted to qualify for the agricultural tax classification, they would not have initially purchased only 19.5 acres. Sprangs point out that although they initially discussed tax implications with Altman and realized that the 19.5 acres did not qualify for an agricultural tax classification, they went ahead with the 19.5 acre purchase. They further point out that Altman conceded the point at trial.

> Q: Mr. Altman, you testified that when Scott Sprang came to you about purchasing the 19 and a half acres you had advertized for sale that you had a discussion with him regarding the difference between ag property and residential property and the taxes that go along with that. Correct?
>
> A: Yes.
>
> Q: And Scott still went forward and purchased the 19 and a half acres, didn't he?
>
> A: Yes.

Additionally, Larson, of Quality Homes, indicated that the reason for the purchase of the 5.5 acres was to obtain a building permit. Larson testified:

> Q: Did anything unusual happen when you went in to apply for the building permit?
>
> A: We work quite a bit with [Sudrla]; so we send our plans over, a sketch to where we're going to put the house and stuff – we

sent that over to him[.] He sent [it] back stating, you know, we've got to have 25 acres or divide it up into sections in order to build a house on it.

Q: So, at that time, he did not issue a building permit?

A: Correct.

Q: What did you do with that information from [Sudrla]?

A: I just went back to Scott and Christina and told them, you know, we're going to need 25 acres in order to get the building permit or section off the pieces.

Mr. Sprang confirmed that this was the nature of the issue necessitating the purchase of the additional property:

Q: When Jeff Larson told you that information [about being turned down for a building permit because you did not have 25 acres], what did you do?

A: I went back and talked to Doug Altman about that.

Q: What did your conversation with Doug Altman entail?

A: That I couldn't – wouldn't be able to build a home on 19 and a half acres because I would not be able to acquire a building permit.

Sprangs finally point out that they would not have purchased the 5.5 acres for tax benefits because it is undisputed that they never farmed the acreage, and therefore, they could not have qualified for the agricultural tax assessment, even if they had owned twenty-five acres at the outset. *See* SDCL 10-6-31.3.[3] For all these reasons,

---

3. Sprangs could not have qualified for the agricultural classification because they did not satisfy either of the first two requirements of SDCL 10-6-31.3, which provides in relevant part:

For tax purposes, land is agricultural land if it meets two of the following three criteria:

(continued . . .)

Sprangs contend that the circuit court correctly found that the parties did not intend that the repurchase condition would apply in the event of changes in the agricultural tax assessment benefit.

[¶12.]      A plaintiff must overcome the "presumption [ ] that the writing accurately reflects the intent of the parties." *Enchanted World Doll Museum*, 398 NW2d at 152. A plaintiff seeking reformation must prove their "cause of action by clear, unequivocal and convincing evidence." Northwestern Nat'l Bank of Sioux Falls v. Brandon, 88 SD 453, 458-59, 221 NW2d 12, 15 (1974). In this case, Altman did not present clear and convincing evidence that the condition failed to express the intent of the parties. On the contrary, based on the evidence presented to the circuit court, it appears that the concern of the parties giving rise to the right of repurchase was the zoning restriction and possible subdivision rather than the agricultural tax assessment.[4] Under these circumstances, the circuit court did not abuse its discretion in refusing to reform the condition.[5]

---

(. . . continued)

(1) At least thirty-three and one-third percent of the total family gross income of the owner is derived from the pursuit of agriculture as defined in subdivision (2) of this section[.]

(2) Its principal use is devoted to the raising and harvesting of crops . . . for intended profit pursuant to subdivision (1) of this section[.]

(3) It consists of not less than twenty acres of unplatted land[.] However, the board of county commissioners may increase the minimum acre requirement up to one hundred sixty acres.

4.     Altman also contends that the parties had agreed Altman had the exclusive right to use the 5.5 acres "indefinitely." Altman, however, concedes that he did not put such a provision in the condition he drafted. Moreover, we affirm

(continued . . .)

*Whether the Condition Ran with the Land*

[¶13.]     Sprangs argued that the condition was a personal contract running to Altman rather than a covenant running with the land.  The circuit court agreed. "On appeal we read a covenant as we would a contract, that is, without any presumption that the trial court was correct."  Kling v. Stern, 2007 SD 51, ¶5, 733 NW2d 615, 617 (citation omitted).

[¶14.]     SDCL 43-12-2 sets forth the requirements for covenants running with the land:

> The *only* covenants which run with the land are:
>
> (1) Those made for the *direct benefit of the property* or some part of it, then in existence;
>
> (2) Covenants of warranty for quiet enjoyment or for further assurance, on the part of the grantor;
>
> (3) Covenants for the payment of rent or of taxes or assessments upon the land, on the part of a grantee; and
>
> (4) All covenants incidental to any of the foregoing covenants.

---

(. . . continued)

the circuit court's determination that the conditions did not run with the land.  Therefore, we need not consider Altman's argument that the condition also included an indefinite use provision.

5.     It is also noteworthy that Altman drafted the condition.  We have stated that one who "writes a contract can by exactness of expression more easily prevent mistakes in meaning than one with whom he is dealing, therefore any doubts arising from ambiguity of language are resolved in favor of the latter." *Enchanted World Doll Museum*, 398 NW2d at 152.

(Emphasis added.) Only subdivision (1) is implicated here. The circuit court concluded that the condition "was meant to relate only to the parties," not for the direct benefit of the property. We agree for a number of reasons.

[¶15.] First, Altman did not draft the condition as a reversionary interest. Instead, he drafted it so that it only gave *him* the *first* opportunity to repurchase. By only retaining the first right of purchase, Altman evidently contemplated that others could purchase the 5.5 acres, an occurrence that would have made it unavailable for the benefit of Altman's property. This evidence suggests that the condition was only intended to facilitate Altman's personal use of the property while he was in possession. Second, although conditions were recorded, they were not incorporated into the warranty deed. Finally, we observe that the condition failed to contain the usual and customary language providing that the condition was to run with the land. Under the circumstances, we affirm the circuit court's finding that the condition was intended only for Altman's benefit and not for the direct benefit of the property. *See* Hyde v. Liebelt, 394 NW2d 888, 890 n1 (SD 1986) (involving a grantor's restriction that prevented competition with the *grantor's business*, but "[f]or a covenant to run with the land . . . the covenant must have been made for the direct benefit of existing property"); Caullett v. Stanley Stilwell & Sons, Inc., 67 NJ Super 111, 118, 170 A2d 52, 56 (1961) (providing that when "the [b]urden is placed upon the land, and the [b]enefit is personal to one of the parties and does not extend to his or other lands, the burden is generally held not to run with the land at law").

#24969

[¶16.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.